STATE of Iowa, Appellee,

v.

Travis James JORDAN, Appellant.

No. 02–0526.

Supreme Court of Iowa.

June 11, 2003.

Linda Del Gallo, State Appellate Defender, and Patricia Reynolds, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Darrel Mullins, Assistant Attorney General, Ron Robertsen, County Attorney, and Timothy N. Schott, Assistant County Attorney, for appellee.

CADY, Justice.

This appeal from a judgment and sentence for assault with a bodily fluid as a habitual offender and interference with official acts presents two issues. The first is whether a party may impeach the credibility of a hearsay declarant who does not testify at trial. The second issue concerns the sufficiency of evidence to support the habitual offender element of the crime. On our review, we conclude the credibility of a non-testifying hearsay declarant may be impeached. We also conclude the State produced sufficient evidence at trial to support the conviction. We affirm the judgment and sentence of the district court.

## I. Background Facts and Proceedings.

Travis James Jordan was an inmate in one of Iowa's correctional facilities on July 19, 2001. He was housed in a high-security, lock-down unit of the facility. A correctional officer opened the pass-through port to the cell occupied by Jordan to give him a roll of toilet paper. As he did, Jordan squirted liquid through the port onto the officer. The liquid hit the officer's face, neck, shirt, and shoulder-mounted radio. Two other correctional officers who were present believed the liquid smelled like urine. Subsequent chemical tests identified the substance to contain known properties of urine. An administrative law judge (ALJ) later investigated the incident.

Jordan was charged in district court with the crimes of assault with a bodily fluid, as a habitual offender, in violation of Iowa Code sections 708.3B, 902.8, and 902.9(3) (2001), and interference with official acts, in violation of section 719.1(2). At trial, Jordan called the ALJ who investigated the incident as a witness. The ALJ testified on direct examination that,

during her investigation of the incident at the prison, she heard Jordan yell from his cell that he "didn't throw urine on the guy. It was water."

On cross-examination of the ALJ, the prosecutor asked the witness if she was aware Jordan had been convicted of burglary in the past, and whether she knew he had been convicted twice in the past of theft. At an earlier hearing on a motion in limine, the district court held that questions concerning the prior convictions were admissible to impeach Jordan's credibility as an out-of-court declarant.

The jury found Jordan guilty of assault with a bodily fluid and interference with official acts. The trial then proceeded to the habitual offender phase. The State produced certified copies of Iowa District Court files from Marshall, Poweshiek, and Grundy Counties showing an individual named "Travis James Jordan" had been convicted of burglary in the second degree in 1990, theft in the second degree in 1992, and theft in the second degree in 2000. An employee of the department of corrections testified that prisoners are assigned a unique seven-digit number the first time they enter the correctional system, and keep the number if they enter the system again after discharge. All records maintained by the department utilize the seven-digit number. The officer made an in-court identification of Jordan and further testified that the prison records maintained on Jordan under his prison number corresponded to the three prior convictions set forth in the court records.

The jury found Jordan a habitual offender based on the three prior felony convictions. The district court sentenced him to a term not to exceed fifteen years for assault with a bodily fluid. This sentence was ordered to run consecutively with the sentence he was serving at the time of the incident. The district court also sentenced

Jordan to a term not to exceed two years for interference with official acts, to run concurrently with the sentence for assault with a bodily fluid.

Jordan appeals. He claims the district court erred by permitting the State to impeach his credibility with evidence of his past convictions when he did not testify at trial. He also claims there was insufficient evidence to support his identity as a habitual offender.

## II. Standard of Review.

■■■ Generally, questions involving the admissibility of evidence are reviewed for an abuse of discretion. *Kurth v. Iowa Dep't of Transp.*, 628 N.W.2d 1, 5 (Iowa 2001). Except in cases of hearsay rulings, trial courts have discretion to admit evidence under a rule of evidence. *See State v. Ross*, 573 N.W.2d 906, 910 (Iowa 1998). However, to the extent a challenge to a trial court ruling on the admissibility of evidence implicates the interpretation of a rule of evidence, our review is for errors at law. *See State v. Birth*, 604 N.W.2d 664, 665 (Iowa 2000). Our review of challenges to the sufficiency of evidence is for correction of errors at law. *State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997).

## III. Impeachment of Hearsay Declarants.

■■■ We first address the claim by Jordan that the district court erred in permitting the State to cross-examine the ALJ about his prior convictions. The dispute over the impeachment of a hearsay declarant arises largely because the traditional approach to hearsay followed in our legal system has focused almost exclusively on the rules regulating the exclusion of hearsay. *See* John G. Douglass, *Beyond Admissibility: Real Confrontation, Virtual Cross–Examination, and the Right to Confront Hearsay*, 67 George Wash. L.Rev. 191, 194–97, 252 (1999). Consequently, courtroom battles over hearsay have nearly always centered on the admission of hearsay, with little consideration given to mounting a further challenge to the hearsay after it has been admitted. *Id.* at 252. Likewise, there are few cases and legal articles illuminating the subject of attacking the credibility of a hearsay declarant. *Id.*

Consistent with this background, Jordan premises his claim of error on the widely held view that a person who does not testify as a witness in court may not be impeached. *See State v. Jones*, 471 N.W.2d 833, 836 (Iowa 1991) (past crimes to impeach a witness must be those of the witness). He then mounts a two-pronged attack. Using a theoretical analysis based on the approach followed in determining whether admission of hearsay statements at trial conflicts with the Confrontation Clause, Jordan argues that once hearsay has been admitted into a trial pursuant to an exception to the rule against hearsay, it may not be subject to further challenge because, by its admission, the court has determined it to be reliable.[1] *See White v. Illinois*, 502 U.S. 346, 356, 112 S.Ct. 736, 743, 116 L.Ed.2d 848, 859 (1992) ("[W]here proffered hearsay has sufficient guarantees of reliability to come within a firmly

---

**1.** At the hearing on the motion in limine, counsel for Jordan argued the hearsay statement by Jordan was admissible as a statement against interest (an admission to the interference with official acts charge) and an excited utterance (there was evidence Jordan made a statement in an angry manner in response to statements made by correctional officers, and after he accused the officers of "lying"). Jordan argued the grounds supporting the admission of the hearsay statement established that the evidence had sufficient guarantees of reliability. Ultimately, the State did not object to the admissibility of the statement at trial.

rooted exception to the hearsay rule, the Confrontation Clause is satisfied."). Additionally, Jordan points out that the rule of evidence governing impeachment by evidence of a conviction of a crime applies by its language only to the "credibility of a witness." *See* Iowa R. Evid. 5.609. Accordingly, Jordan concludes the prosecutor improperly used the evidence of his prior convictions because he never testified as a witness in the case.

We acknowledge the historical role of the Confrontation Clause in regulating the admission of hearsay. *See White,* 502 U.S. at 352–53, 112 S.Ct. at 740–41, 116 L.Ed.2d at 856–57. Yet, the test of reliability utilized under the clause does not broadly restrict the traditional role of cross-examination once hearsay has been admitted.[2] Additionally, not only is the right to challenge the credibility of the declarant consistent with the Confrontation Clause, our rules of evidence specifically provide for a process to impeach a hearsay declarant. This little recognized provision is Iowa Rule of Evidence 5.806, which provides as follows:

> When a hearsay statement, or a statement defined in rule 5.801(*d* )(2)(C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not

subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination.

Rule 5.806 is nearly identical to federal rule 806. It essentially permits impeachment of a hearsay declarant, whose hearsay is admitted at trial, by any method of impeachment available to impeach a witness. The advisory committee notes to the federal rule explain:

> The declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment and support as though he had in fact testified. See rules 608 and 609.

Fed.R.Evid. 806 advisory committee's note. Thus, the rule primarily exists to even the playing field when a party attempts to present hearsay evidence through a witness other than the declarant in an effort to prevent the other party from challenging the declarant's credibility or to capitalize on the good credibility of the witness. *See* David Sonenshein, *Impeaching the Hearsay Declarant,* 74 Temple L.Rev. 163, 164 (2001).

The rule essentially treats out-of-court declarants as if they testified in the courtroom, and utilizes the other rules of evidence governing in-court witnesses and testimony to determine the manner in which the declarant's credibility can be

---

**2.** The very strength of cross-examination comes, in large measure, from the ability of lawyers to engage in hostile questioning, the process of " 'testing the recollection and sifting the conscience of the witness.' " John G. Douglass, *Beyond Admissibility: Real Confrontation, Virtual Cross–Examination, and the Right to Confront Hearsay,* 67 George Wash.

L.Rev. 191, 249 (1999) (quoting *Mattox v. United States,* 156 U.S. 237, 242, 15 S.Ct. 337, 339, 39 L.Ed. 409, 411 (1895)). Cross-examination not only seeks to elicit details omitted during direct examination to show inconsistencies or qualifications in the testimony, but also to draw out facts to demonstrate the witness is mistaken or untruthful. *Id.* at 241.

attacked or impeached. *See United States v. Saada*, 212 F.3d 210, 221 (3d Cir.2000). Generally, this means evidence of prior statements, character and conduct, and impeachable prior convictions may be utilized. *See* Douglass, 67 George Wash. L.Rev. at 252–53; *Saada*, 212 F.3d at 221. Because the rule allows for the cross-examination of a declarant to take place as if the declarant testified, the process set out in rule 5.806 has been described as "virtual cross-examination." Douglass, 67 George Wash. L.Rev. at 252–53.

It is unnecessary for us to detail the full scope and application of rule 5.806.[3] In this case, Jordan offered his hearsay statement as proof that the substance squirted on the correctional officer was water, and the State attempted only to impeach Jordan with evidence of Jordan's prior convictions pertaining to untruthfulness. Rule 5.609 permits a witness to be impeached by a prior conviction, and rule 5.608 permits the prior convictions to be inquired into on cross-examination.[4]

We conclude the district court did not err by permitting the State to attempt to impeach the declarant after the witness testified on direct examination to a hearsay statement made by Jordan and offered for the truth of the matter asserted. The procedure followed by the State was permitted under rule 5.806 and, contrary to Jordan's claim, was not inconsistent with our holding in *State v. Jones*. In *Jones*, we indicated prior convictions used for impeachment purposes must be prior convictions of the witness. *Jones*, 471 N.W.2d at 836. However, the witnesses sought to be impeached in *Jones* provided only character testimony about the defendant, and did not testify to any hearsay statements. *Id.* at 834–35. This is a critical 'factor and serves to distinguish the case from this case. *Jones* did not implicate rule 5.806.

## IV. Substantial Evidence of Habitual Offender Status.

■ Under Iowa law, the identity of names between the defendant and a defendant named in a judgment of conviction, by itself, is insufficient to establish the defendant as a habitual offender. *See State v. Sanborn*, 564 N.W.2d 813, 815 (Iowa 1997). There must be additional evidence showing

---

**3.** We acknowledge a variety of issues have surfaced concerning the application of the rule under circumstances not implicated in this case that may confine its scope. *See, e.g., State v. Martisko*, 211 W.Va. 387, 566 S.E.2d 274, 279–82 (W.Va.2002) (discussing the intersection of rule 806 with the bar on use of extrinsic evidence of prior bad conduct under rule 608(a)); David Sonenshein, *Impeaching the Hearsay Declarant*, 74 Temple L.Rev. 163, 164–70 (2001) (generally discussing various issues in the application of rule 806); Margaret Meriwether Cordray, *Evidence Rule 806 and the Problem of Impeaching the Nontestifying Declarant*, 56 Ohio State L.J. 495 (1995) (same).

**4.** While rules 5.608 and 5.609 permit a witness to be impeached with a prior conviction on cross-examination, the witness in this case denied any knowledge of Jordan's prior convictions. Consequently, the State's effort to impeach was incomplete because the record

revealed that the extrinsic evidence of the prior convictions subsequently introduced at trial was only admitted during the habitual offender phase of the trial. Nevertheless, the questions propounded by the prosecutor clearly suggested to the jury that Jordan had been convicted of the crimes.

An in-court witness who testifies to a hearsay statement may be questioned on cross-examination about any knowledge of the declarant's prior convictions concerning dishonesty. *See United States v. Saada*, 212 F.3d 210, 221 (3d Cir.2000); *United States v. Bovain*, 708 F.2d 606, 613 (11th Cir.1983); Douglass, 67 George Wash. L.Rev. at 252–53. However, if the in-court witness has no knowledge of the declarant's prior convictions, then the party seeking to impeach must resort to extrinsic evidence to complete the impeachment. *See* Rule 5.608; *Saada*, 212 F.3d at 221.

the defendant is the same person named in the judgment of conviction. *See id.* at 815–16.

In *Sanborn,* we indicated that other evidence to support the necessary match between the defendant and a defendant named in a judgment of conviction included a social security number and a birth date. *Id.* at 816. The uniqueness of the full name is also a factor. *Id.* The evidence, as a whole, must be such "as could convince a rational trier of fact that defendant is guilty beyond a reasonable doubt." *State v. Robinson,* 288 N.W.2d 337, 339 (Iowa 1980).

In this case, substantial evidence exists to show Jordan was the same "Travis James Jordan" named in the prior judgments of conviction. Not only is the full name relatively unique, but each judgment of conviction matched the convictions listed in Jordan's prison records, which were identified by Jordan's personal inmate identification number. The crimes and dates of the court judgments were consistent with the prison records. We conclude the trial record contained sufficient proof to support a finding by the jury that Jordan was previously convicted of three felony offenses.

### V. Conclusion.

We affirm the judgment and sentence of the district court.

**AFFIRMED.**