STATE of Iowa, Appellee,

v.

Brett Preston **DULLARD**, Appellant.

No. 02–0356.

Supreme Court of Iowa.

Sept. 4, 2003.

Linda Del Gallo, State Appellate Defender, and Robert P. Ranschau, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, John P. Sarcone, County Attorney, and Stephanie Cox, Assistant County Attorney, for appellee.

CADY, Justice.

The principal questions presented in this appeal are whether the district court erred in admitting a note written by an unknown person as evidence in a trial involving the crime of possession with intent to manufacture a controlled substance and whether substantial evidence supported the conviction. On our review, we vacate the decision of the court of appeals and reverse the judgment and sentence of the district court. We remand the case for a new trial.

## I. Background Facts and Proceedings.

Police officers from the city of Des Moines police department went to a home in a residential neighborhood of Des Moines in response to a report of a methamphetamine lab located at the house. The officers knocked on the front door of the house, and Brett Dullard eventually opened the door. The officers believed Dullard lived in the home with his mother. Dullard's mother arrived at the home a short time later, and gave permission for the officers to search the residence, as well as a detached garage.

The search of the home revealed a plastic baggy containing a white powder substance. The baggy was located in the ceiling of a downstairs bedroom. The police also found a scanner capable of monitoring police communications. The white substance later tested negative for a controlled substance, but was suitable for use as a cutting agent for pure methamphetamine.

The search of the garage revealed potential methamphetamine precursors and numerous materials commonly used to manufacture methamphetamine, including six cans of starting fluid, a sack containing a white granular substance, two metal cylinders with brass fittings, a one-gallon glass jar, plastic pitchers, a container of acetone, a container of Coleman camping fluid, and three unopened boxes of Benadryl. The brass fittings on the metal cylinders were corroded with a blue substance, indicating the cylinders once contained anhydrous ammonia.

The police also found a small spiral notebook in a wooden desk located in the garage. It contained a handwritten note from an unidentified person. The note read as follows:

B—

I had to go inside to pee + calm my nerves somewhat down.

When I came out to go get Brian I looked over to the street North of here + there sat a black + white w/the dude out of his car facing our own direction— no one else was with him

The police also seized various items from a car parked in the driveway of the home. The police believed the car belonged to a female friend of Dullard's. The items seized included an air tank sprayer and some steel and brass flexible hoses with fittings.

Dullard was charged with possession of ephedrine or pseudoephedrine with intent to use it as a precursor and with possession of ether with the intent to use it as a precursor. At trial, the State, among other evidence, introduced some of the items seized during the search. The police officers also explained how methamphetamine is manufactured from Benadryl and how the items seized can be assembled and used to manufacture methamphetamine. There was also testimony that each tablet

of Benadryl contained thirty milligrams of pseudoephedrine.

The handwritten note was also introduced into evidence over Dullard's hearsay objection. The State argued the note was not offered to prove the truth of the matters it asserted but to connect Dullard to the items in the garage used to manufacture methamphetamine and the Benadryl. The State argued the note was written to Dullard based on the first letter of his first name.

The jury found Dullard guilty of possession of ephedrine or pseudoephedrine with intent to use it as a precursor and acquitted him of the possession of ether charge. The district court sentenced him as a second offender to a term of incarceration not to exceed eight years.

Dullard appealed and claimed error on three grounds. First, he claimed the district court admitted the handwritten note into evidence in violation of the rule against hearsay. Second, he claimed there was insufficient evidence to connect him to the Benadryl in the garage or the other items found in the garage. Third, he claimed his trial counsel was ineffective.

We transferred the case to the court of appeals. The court of appeals reversed the conviction after concluding the trial court erred in admitting the handwritten note into evidence and after finding the remaining evidence presented by the State was insufficient to show Dullard possessed the Benadryl tablets. We granted further review.

## II. Standard of Review.

■ We typically review rulings on the admission of evidence for an abuse of discretion. *State v. Jordan,* 663 N.W.2d 877, 879 (Iowa 2003). "Except in cases of hearsay rulings, trial courts have discretion to admit evidence under a rule of

evidence." *Id.* Hearsay, however, must be excluded as evidence at trial unless admitted as an exception or exclusion under the hearsay rule or some other provision. *See* Iowa R. Evid. 5.802. This means a district court has no discretion to deny the admission of hearsay if the statement falls within an enumerated exception, subject, of course, to the rule of relevance under rule 5.403, and has no discretion to admit hearsay in the absence of a provision providing for it. Similarly, the question whether a particular statement constitutes hearsay presents a legal issue. *See United States v. McGlory,* 968 F.2d 309, 332 (3d Cir. 1992). Thus, it is within this framework that we review hearsay rulings for correction of errors at law. *See State v. Ross,* 573 N.W.2d 906, 910 (Iowa 1998). Hearsay inadmissible under the rule is considered to be prejudicial to the nonoffering party unless otherwise established. *Id.*

■ Likewise, we review challenges to the sufficiency of evidence for correction of errors at law. *State v. Thomas,* 561 N.W.2d 37, 39 (Iowa 1997).

## III. Hearsay.

Hearsay "is a statement, other than one made by the declarant while testifying at the trial ... offered in evidence to prove the truth of the matter asserted." Iowa R. Evid. 5.801(c). Hearsay is not admissible unless it is exempt from the rule or falls within one of the exceptions. *See id.* 5.802.

Before considering the exemptions and exceptions to the rule against hearsay, an inquiry must first be made to determine if the evidence under consideration is "a statement ... offered in evidence to prove the truth of the matter asserted." *Id.* 5.801(c). If not, it is not hearsay and is excluded from the rule by definition. 2 John W. Strong, et al., *McCormick on Evidence* § 249, at 100 (5th ed.1999). Thus, a declaration is excluded from the

definition of hearsay when it is not a statement or is not offered to prove the truth of the matter asserted. *See* 4 Clifford S. Fishman, *Jones on Evidence* § 24:10, at 218 (7th ed.1992) [hereinafter Jones] ("categorizing a person's words as an assertion ... does not answer the question" of whether the evidence is hearsay without also determining if "the statement is being offered to prove the truth of the matter asserted").

A statement is defined under our rules of evidence as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Iowa R. Evid. 5.801(*a*). The term assertion is not similarly defined in the Iowa or federal rules of evidence. Nevertheless, it is generally recognized to be a statement of fact or belief. 4 Jones § 24:10, at 217; *see also State v. Leonard,* 243 N.W.2d 887, 890 (Iowa 1976) ("[The] remark was not an assertion of fact. A nonassertive utterance is not hearsay.").

Under the State's argument in this case, the author of the note asserts he or she is nervous and that the police are watching the house. The State acknowledges this note constitutes a written assertion under the rule, but claims it was not hearsay because it was not offered to prove the truth of the assertion, but a different proposition inferred from the words of warning. The State maintains it was offered to show the declarant's belief that the recipient of the note needed to be told of the events because he was involved in the drug activity in the garage and was in possession of the drug lab materials.

The court of appeals considered the note in a different light. It found the relevant assertion made in the note was not the expressed assertion that the police are watching or that the author of the note is worried and upset. Instead, it found the note contained an implied proposition by the writer that Dullard possessed the methamphetamine materials. Under this approach, the court of appeals determined the note was hearsay because it was offered to show the declarant's belief in this implied proposition, and the declarant was not available at trial to be cross-examined about the proposition. Thus, the resolution of this issue requires us to examine the concept of implied assertions and the extent to which they constitute statements under our definition of hearsay within rule 5.801(*c*).

The issue we confront has been imbedded in debate and controversy throughout the development of the common law, and has continued to be debated to a large degree following the adoption of the federal rules of evidence. *See United States v. Zenni,* 492 F.Supp. 464, 465 (E.D.Ky. 1980); 4 Jones § 24:11, at 219; Craig R. Callen, *Hearsay and Informal Reasoning,* 47 Vand. L.Rev. 43, 45 (1994). Despite the wealth of legal commentary and some scholarly court decisions on the subject, no clear answer or approach has emerged. *See* Roger C. Park, *"I Didn't Tell Them Anything About You": Implied Assertions as Hearsay Under the Federal Rules of Evidence,* 74 Minn. L.Rev. 783, 802–29 (1990) (reviewing judicial treatment of implied assertions under the federal rules of evidence). In truth, many courts have not engaged in a serious examination of the subject of implied assertions as hearsay, while those who have follow divergent paths. *See* Park, 74 Minn. L.Rev. at 802. Legal scholars advocate a variety of positions, with a slight preference, perhaps, to favor an approach that would include most implied assertions within the definition of hearsay, at least where the declarant intended to some degree to assert the proposition. *See* 4 Jones § 24:12, at 222. The United States Supreme Court has never squarely addressed the issue, but has pre-

viously endorsed the concept of implied assertions as hearsay. *See id.* § 24:11, at 220. The federal circuit courts of appeals are fairly evenly divided on the issue. *See* Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 801.10[2][c], at 801–10 to 801–12 nn. 13, 15 (Joseph M. McLaughlin ed., 2d ed.2003); Callen, 47 Vand. L.Rev. at 47–48 n. 18.

The implied assertion issue arises in this case because the words written by the out-of-court declarant are not offered to prove the truth of the words. In fact, the words themselves have no real relevance to the case. Instead, the handwritten note is offered solely to show the declarant's belief, implied from the words and the message conveyed, in a fact the State seeks to prove—Dullard's knowledge and possession of drug lab materials. Thus, the question is whether this implied belief of the declarant is a statement under our definition of hearsay under rule of evidence 5.801(*c*).

The starting point for the common law approach to implied assertions inevitably begins with the celebrated and durable case of *Wright v. Tatham,* 112 Eng. Rep. 488 (Ex. Ch. 1837). The case involved an action to set aside a will based on the incompetency of the testator. *Id.* at 489. At trial, the proponents of the will offered several letters written to the testator by various individuals concerning a variety of business and social subjects. *Id.* at 489–92. The purpose of the letters was to show the absent declarants must have believed the testator was able to engage in intelligent discourse on the various topics discussed in the letters. *Id.* at 515. This belief, therefore, constituted evidence of the testator's competency.

In the course of holding that the statements contained in the letters were hearsay, the court in *Wright,* through the scholarship of Baron Parke's opinion, utilized the now-famous example of a sea captain, who, after carefully inspecting his ship, embarked on an ocean voyage with his family, an action offered as proof of the seaworthiness of the ship. *See id.* at 516. Baron Parke used the illustration to show that such nonverbal conduct would nevertheless constitute hearsay because its value as evidence depended on the belief of the actor. *See id.* at 516–17. This illustration was important in the court's analysis because the main problem sought to be avoided by the rule against hearsay—an inability to cross-examine the declarant—is the same whether or not the assertion is implied from a verbal statement or implied from nonverbal conduct. Thus, assertions that are relevant only as implying a statement or opinion of the absent declarant on the matter at issue constitute hearsay in the same way the actual statement or opinion of the absent declarant would be inadmissible hearsay.

This approach became the prevailing common law view, but did not escape criticism and debate over the years from legal scholars and some courts. Two central arguments surfaced to support a competing approach that advocated a separation between implied assertions and expressed assertions so that implied assertions would be removed from the rule against hearsay. One legal scholar summarized these arguments:

> First, when a person acts in a way consistent with a belief but without intending by his act to communicate that belief, one of the principal reasons for the hearsay rule—to exclude declarations whose veracity cannot be tested by cross-examination—does not apply, because the declarant's sincerity is not then involved. In the second place, the underlying belief is in some cases self-verifying:

There is frequently a guarantee of the trustworthiness of the inference to be drawn ... because the actor has based his actions on the correctness of his belief, i.e., his actions speak louder than words.

4 Jack B. Weinstein et al., *Weinstein's Evidence* ¶ 801(a)[01], at 801–61 to 801–62 (1st ed.1990) (citation omitted); *see also* Edmund M. Morgan, *Hearsay,* 25 Miss. L.J. 1, 8 (1953); Judson F. Falknor, *The "Hear–Say" Rule as a "See–Do" Rule: Evidence of Conduct,* 33 Rocky Mnt. L.Rev. 133, 136 (1961).

Once the proposition is accepted that the lack of intent to assert frees conduct from the hearsay rule, the opponents of the common law rule concluded that an unintended implication of a verbal assertion should similarly fall outside the hearsay rule. As with conduct, the opponents argue, the lack of intent to assert an implied assertion from speech also makes unintended implied assertions much less vulnerable than expressed assertions to the problem sought to be avoided by the hearsay rule. In particular, the opponents point out that there is a reduced risk of mendacity in implied assertions when the declarant has no real intention of asserting a fact sought to be proved. *See* Falknor, 33 Rocky Mnt. L.Rev. at 136. Consequently, the critics of the common law approach claim implied assertions should not be treated as express assertions because of lack of opportunity for cross-examination to test the veracity of the implied assertion would have no significant impact. *Id.*

Federal rule of evidence 801(a) appears to support the departure from the common law, evidenced more by the advisory committee note accompanying the rule than the language of the rule itself. *See* David E. Seidelson, *Implied Assertions and Federal Rule of Evidence 801: A Continuing Quandary for Federal Courts,* 16 Miss. C.L.Rev. 33, 33–34 (1995). Although the rule does not expressly address the subject of implied assertions, the advisory committee note states:

The definition of "statement" assumes importance because the term is used in the definition of hearsay in subdivision (c). The effect of the definition of "statement" is to exclude from the operation of the hearsay rule all evidence of conduct, verbal or nonverbal, not intended as an assertion. The key to the definition is that nothing is an assertion unless intended to be one.

It can scarcely be doubted that an assertion made in words is intended by the declarant to be an assertion. Hence verbal assertions readily fall into the category of "statement." Whether nonverbal conduct should be regarded as a statement for purposes of defining hearsay requires further consideration. Some nonverbal conduct, such as the act of pointing to identify a suspect in a lineup, is clearly the equivalent of words, assertive in nature, and to be regarded as a statement. Other nonverbal conduct, however, may be offered as evidence that the person acted as he did because of his belief in the existence of the condition sought to be proved, from which belief the existence of the condition may be inferred. This sequence is, arguably, in effect an assertion of the existence of the condition and hence properly includable within the hearsay concept. See [Edmund M.] Morgan, Hearsay Dangers and the Application of the Hearsay Concept, 62 Harv. L.Rev. 177, 214, 217 (1948), and the elaboration in [Ted] Finman, Implied Assertions as Hearsay: Some Criticisms of the Uniform Rules of Evidence, 14 Stan. L.Rev. 682 (1962). Admittedly, evidence of this character is untested with respect to the

perception, memory, and narration (or their equivalents) of the actor, but the Advisory Committee is of the view that these dangers are minimal in the absence of an intent to assert and do not justify the loss of the evidence on hearsay grounds. No class of evidence is free of the possibility of fabrication, but the likelihood is less with nonverbal than with assertive verbal conduct. The situations giving rise to the nonverbal conduct are such as virtually to eliminate questions of sincerity. Motivation, the nature of the conduct, and the presence or absence of reliance will bear heavily upon the weight to be given the evidence. [Judson F.] Falknor, The "Hear–Say" Rule as a "See–Do" Rule: Evidence of Conduct, 33 Rocky [Mnt.] L.Rev. 133 (1961). Similar considerations govern nonassertive verbal conduct and verbal conduct which is assertive but offered as a basis for inferring something other than the matter asserted, also excluded from the definition of hearsay by the language of subdivision (c).

Fed.R.Evid. 801(a) advisory committee note.

The thrust of the advisory committee note is that the same considerations that justify the specific exclusion of nonverbal conduct not intended as an assertion from the definition of a statement under rule 801(a)—the minimal dangers resulting from the inability to cross-examine the declarant—support, by analogy, the similar exclusion of nonassertive verbal conduct, as well as assertive verbal conduct offered as a basis for inferring something other than the asserted matter.

We have not previously undertaken a detailed analysis of this issue although we have determined that implicit assertions contained within verbal declarations constitute hearsay. *See State v. Rawlings,*

402 N.W.2d 406, 408–09 (Iowa 1987). Thus, foundational facts that must be assumed for the declaration to make sense are considered matters the declarant necessarily intended to assert. *See id.* We have not otherwise determined whether an assertive declaration offered as a basis for inferring something other than the matter asserted is hearsay under rule 5.801(*a*).

 Generally, a position taken by the advisory committee on federal rules is persuasive authority for determining the meaning of our Iowa rules of evidence. *See* 7 James A. Adams & Joseph P. Weeg, *Iowa Practice (Evidence)* § 102.1, at 6 (2002–03) [hereinafter Adams & Weeg]. This is because the federal definition of hearsay and the defined terms within the definition are nearly identical to the corresponding Iowa rules. Thus, in the same manner, we typically follow federal decisions interpreting rules closely aligned to the Iowa rules and we look for guidance to the United States Supreme Court advisory committees' notes. *See State v. Hackney,* 397 N.W.2d 723, 727–28 (Iowa 1986); *see also Tome v. United States,* 513 U.S. 150, 160, 115 S.Ct. 696, 702, 130 L.Ed.2d 574, 584 (1995) (notes are a "useful guide in ascertaining the meaning of the Rules"); Adams & Weeg § 102.1, at 6.

On the other hand, the persuasiveness of the committee notes on implied assertions is undermined by the clear split of authority among the federal circuit courts, as well as many legal scholars. *See* 4 Jones § 24.12, at 223. The criticism of the advisory committee notes is capsulized by one leading scholar as follows:

The Advisory Committee's apparent attempted rejection of Wright v. Doe d. Tatham is as unfortunate as it is incorrect. When a statement is offered to infer the declarant's state of mind from which a given fact is inferred in the form of an opinion or otherwise, since the

truth of the matter asserted must be assumed in order for the nonasserted inference to be drawn, the statement is properly classified as hearsay under the language of Rule 801(c). Since the matter asserted in the statement must be true, a reduction in the risk of sincerity is not present. The Advisory Committee's reliance on the analogy to nonverbal nonassertive conduct where a reduction in the risk of fabrication is caused by a lack of intent to assert anything is thus clearly misconceived. It is further suggested that the fact that the practical importance of the concept (even if assumed theoretically sound) is so small in relation to the confusion in analysis the concept causes in the minds of those attempting to apply the hearsay rule argues strongly in favor of rejection of the concept that statements should be found to be non-hearsay solely on the basis of being offered for the truth of a different inference. With respect to those statements possessing sufficient guarantees of trustworthiness, resort to the residual hearsay exception of Rule 807 is clearly preferable.

3 Michael H. Graham, *Handbook of Federal Evidence* § 801.7, at 73–77 (5th ed.2001) (footnotes omitted).

The circumstances of this case, as well as other cases, can make it tempting to minimize hearsay dangers when a declaration is assertive but offered as a basis for inferring a belief of the declarant that most likely was not a significant aspect of the communication process at the time the declaration was made. Absent unusual circumstances, the unknown declarant likely would not have thought about communicating the implied belief at issue, and this lack of intent arguably justifies excluding the assertion from the hearsay rule. Nevertheless, we are not convinced that the absence of intent necessarily makes the underlying belief more reliable, especially when the belief is derived from verbal conduct as opposed to nonverbal conduct.

Four dangers are generally identified to justify the exclusion of out-of-court statements under the hearsay rule: erroneous memory, faulty perception, ambiguity, and insincerity or misrepresentation. Park, 74 Minn. L.Rev. at 785–86; *see also* Edmund M. Morgan, *Hearsay Dangers and the Application of the Hearsay Concept*, 62 Harv. L.Rev. 177, 185–88 (1948). Yet, the distinction drawn between intended and unintended conduct or speech only implicates the danger of insincerity, based on the assumption that a person who lacks an intent to assert something also lacks an intent to misrepresent. The other "hearsay dangers," however, remain viable, giving rise to the need for cross-examination. Moreover, even the danger of insincerity may continue to be present in those instances where the reliability of the direct assertion may be questioned. If the expressed assertion is insincere, such as a fabricated story, the implied assertion derived from the expressed assertion will similarly be unreliable. Implied assertions can be no more reliable than the predicate expressed assertion. Paul R. Rice, *Should Unintended Implications of Speech be Considered Nonhearsay? The Assertive/Nonassertive Distinction Under Rule 801(a) of the Federal Rules of Evidence*, 65 Temp. L.Rev. 529, 538 (1992).

The consequence of the committee's approach is to admit into evidence a declarant's belief in the existence of a fact the evidence is offered to prove, without cross-examination, just as if the declarant had explicitly stated the belief. Yet, if the declarant of the written note in this case had intended to declare his or her belief that Dullard had knowledge and possession of drug lab materials, the note would unquestionably constitute hearsay. Im-

plied assertions from speech intended as communication clearly come within the definition of a statement under rule 5.801(*a* )(1). Unlike the committee, however, we do not believe indirect or unintentional assertions in speech are reliable enough to avoid the hearsay rule.[1] We think the best approach is to evaluate the relevant assertion in the context of the purpose for which the evidence is offered. *See State v. Nance*, 533 N.W.2d 557, 561 (Iowa 1995).

We recognize this approach will have a tendency to make most implied assertions hearsay. *See* Christopher B. Mueller, *Incoming Drug Calls and Performative Words: They're Not Just Talking About It, Baron Parke!*, 16 Miss. C.L.Rev. 117, 121–22 (1995). However, we view this in a favorable manner because it means the evidence will be judged for its admission at trial based on accepted exceptions or exclusions to the hearsay rule. It also establishes a better, more straightforward rule for litigants and trial courts to understand and apply. *See* 4 Jones § 24:12, at 225.

■ Additionally, we interpret legislative enactments consistent with common law principles when the language used by the legislature does not specifically negate the common law. *State v. Pace*, 602 N.W.2d 764, 771 (Iowa 1999). Clearly, there is no explicit language in our definition of hearsay under rule 5.801(*a* ) and (*c* ), as with the federal rule, that categorizes implied assertions from oral or written words as nonhearsay. The rule only expressly excludes unintended conduct. The characterization arrived at by the committee is achieved by analogy to nonverbal conduct. Yet, the specific exclusion under the rule of nonverbal conduct as nonhearsay, in the absence of the specific exclusion of nonassertive verbal conduct or assertive verbal conduct offered to infer something other than the matter asserted from the definition of a statement, tends to indicate that the legislature may not have intended to exclude such implied assertions from the hearsay rule. *See* Seidelson, 16 Miss. C.L.Rev. at 52. Thus, the rule should be read to incorporate our common law approach. *See* 4 Jones § 24.12, at 224–25.

■ Lastly, we recognize our role is to interpret our rule according to the legislative intent as revealed by the language of the rule. Although the rule clearly distinguishes between intentional and unintentional conduct under rule 5.801(*a* )(2), that distinction is not made with oral or written assertions under rule 5.801(*a* )(1). Accordingly, we conclude that assertions implied from assertive speech constitute statements under rule 5.801(*a* ).

## IV. Exemption From Hearsay Rule.

Having determined the note to be hearsay, we next consider whether it would be admissible, as secondarily argued by the State, under the exemption to the hearsay rule applicable to the statements by coconspirators pursuant to Iowa Rule of Evidence 5.801(*d* )(2)(E). This rule exempts certain statements from the operation of the hearsay rule, including "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy," offered against a party. *Id.*

The theory for excluding admissions of party opponents, such as co-conspirator statements, from the rule against hearsay is based on the adversary system, rather than any presumed trustworthiness or the satisfaction of some other condition of the hearsay rule. Fed.R.Evid. 801(d)(2) advi-

---

**1.** We do not consider whether conduct or actions that may be associated with oral or written assertions could be used to support the admission of unintentional implied assertions under Iowa Rule of Evidence 5.801(*a* )(2).

sory committee note. Co-conspirator statements[2] become representative admissions between the co-conspirators when the declarant and the defendant's participation in the conspiracy is established. *State v. Tangie,* 616 N.W.2d 564, 569 (Iowa 2000).

Without specifically addressing the extent to which implied assertions may apply to co-conspirator statements, we agree with our court of appeals that there was insufficient evidence of any conspiracy in this case. Proof of a conspiracy must include evidence independent of the co-conspirator's statement. *State v. Florie,* 411 N.W.2d 689, 696 (Iowa 1987). In addition to the statement, "the circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement was made, or evidence corroborating the content of the statement" must be considered. Fed. R.Evid. 801 advisory committee's note, 1997 amendment. In this case, there was insufficient evidence to establish the speaker's identity, the time and place the expressed or implied assertions were made, and any other circumstances supporting a conspiracy between the unknown declarant and Dullard.

## V. Exceptions to the Hearsay Rule.

Without elaborating in great detail, we also fail to find any other exception to the hearsay rule that would allow the note to be admitted. Although the note implies a belief or state of mind of the declarant, the declarant's state of mind is not relevant to the case. *See* Iowa R. Evid. 5.803(3). Moreover, the state-of-mind exception to the hearsay rule does not apply to prove the truth of the belief expressed. *Id.* (exception permits "[a]

statement of the declarant's then existing state of mind" but does not include "a statement of ... belief to prove the fact ... believed unless it relates to the execution, revocation, identification, or terms of declarant's will."). Additionally, the implied assertion would fall outside the excited utterance exception. *See id.* 5.803(2). The relevant assertion in the note is in the form of an implied belief that Dullard possesses drug lab materials. Although the expression of a belief could constitute an excited utterance, there was insufficient evidence in this case to establish that the unknown declarant was competent to testify to the belief or that the event witnessed gave rise to any personal knowledge of the belief. There were simply no circumstances to adequately suggest the basis for the declarant's belief implied from the note. We can find no other exceptions that would justify the admission of the note. Accordingly, the note was improperly admitted.

## VI. Disposition.

Having found the note was erroneously admitted at trial, we next consider whether admission of the note resulted in prejudice to Dullard. In this case, the State did not argue the absence of prejudice. Thus, prejudice is presumed. *See Ross,* 573 N.W.2d at 910. That aside, the prejudice is apparent because the admission of the note played a pivotal role in establishing the possession element of the crime and Dullard was unable to cross-examine the declarant to overcome this prejudice. This is not a case in which there is *otherwise overwhelming evidence* of guilt. The error by the trial court in admitting the note into evidence supports reversal of the conviction.

---

**2.** Rule 5.801(*d*)(2) does not distinguish between express statements and implied statements. *See* 4 Jack B. Weinstein et al., *Wein-* *stein's Evidence* ¶ 801(d)(2)(A)[01], at 801–239 (1st ed.1990).

In reversing the conviction, the court of appeals did not remand the case for a new trial. Normally, when error occurs at trial resulting in a reversal of a criminal conviction on appeal, double-jeopardy principles do not prohibit a retrial. *Lockhart v. Nelson,* 488 U.S. 33, 38, 109 S.Ct. 285, 289, 102 L.Ed.2d 265, 272 (1988). An exception exists, however, when the defendant's conviction is reversed on grounds that the evidence was insufficient to sustain the conviction. *Id.* at 39, 109 S.Ct. at 290, 102 L.Ed.2d at 272–73 (citing *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)). Thus, when a reviewing court determines prejudicial trial error occurred in a criminal trial, the case will not be remanded for retrial when the evidence at trial was insufficient to support the conviction. *See id.* at 39, 109 S.Ct. at 290, 102 L.Ed.2d at 272–73; *see also State v. Huss,* 657 N.W.2d 447, 451–52 (Iowa 2003). Instead, it is dismissed.

The court of appeals found there was insufficient evidence to establish Dullard possessed the precursor. Yet, in making this determination, it specifically excluded any consideration of the erroneously admitted handwritten note. This was error. In determining whether retrial is permissible all the evidence admitted during the trial, including erroneously admitted evidence, must be considered. *Id.* at 40–42, 109 S.Ct. at 290–93, 102 L.Ed.2d at 273–75. The rationale for doing this is based on the reliance by the State upon the trial court's decision to admit the evidence and the possibility that the State would have been able to introduce other evidence if error would have been found at trial, or otherwise employed different tactics to avoid a dismissal. Thus, we must turn to a consideration of the sufficiency of all the evidence to determine the relief to be granted.

In addressing the sufficiency of evidence, we observe Dullard raised this issue on appeal based on the trial court's failure to grant a judgment of acquittal. He claimed there was insufficient evidence to show that he possessed or had knowledge of the Benadryl tablets found in the garage or had knowledge of the presence of the other drug materials in the garage.

The State was required to establish Dullard possessed a precursor with the intent to manufacture to sustain a conviction in this case. It sought to do this by showing constructive possession. We recently outlined the basic tenets of constructive possession in *State v. Webb,* 648 N.W.2d 72, 76–79 (Iowa 2002). *See also State v. Cashen,* 666 N.W.2d 566, 569–71 (Iowa 2003). Mere opportunity of access to the area where the contraband is located, without more, will not support a finding of possession. *Webb,* 648 N.W.2d at 77. However, possession may be inferred when contraband is found in an area that is " *'immediately and exclusively accessible'* " to the defendant and subject to his or her " 'dominion and control, or to the joint dominion and control' " of the defendant and another. *Id.* (quoting *State v. Reeves,* 209 N.W.2d 18, 22 (Iowa 1973)). If the defendant is in exclusive possession of the premises where the contraband is located, knowledge and control may be inferred. *Id.* However, when there is joint possession of the premises, knowledge and control by the defendant must be established by actual knowledge or circumstances from which a jury could infer knowledge. *Id.*

In this case, there was evidence Dullard resided in the house with his mother and that he was in joint possession of the premises. Yet, this evidence is insufficient to infer exclusive possession of the precursors. Thus, the handwritten note, which a jury could infer was written

to Dullard, becomes a critical piece of evidence. It was located in the garage where the precursors were found, along with other evidence of manufacturing. Moreover, the State used the note as evidence that Dullard was involved in the operation of a drug lab and had knowledge and control of the drug lab materials in the garage. As used by the State, we find the implied assertions from the note, together with the other evidence at trial, constitute sufficient evidence that Dullard possessed and controlled the precursor. We find substantial evidence supported the conviction.

## VII. Conclusion.

Based on our determination that Dullard is entitled to a new trial, it is unnecessary for us to address the other issues raised by Dullard on appeal. We conclude the judgment and sentence of the district court must be reversed based on the error in admitting the hearsay evidence. The case shall be remanded for a new trial.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AND SENTENCE REVERSED AND CASE REMANDED FOR NEW TRIAL.**

All justices concur except CARTER, J. and LAVORATO, C.J., who dissent.

CARTER, Justice (dissenting).

I agree with the majority's conclusion that the court of appeals applied an improper standard in considering the motion for judgment of acquittal as if the hearsay statement had not been admitted into evidence. Such motions must be determined on the basis of the evidence that has been admitted rather than the evidence that should have been admitted. I disagree, however, with the conclusion of the majority that, if the evidence presented by the State is viewed as including the challenged hearsay statement, the evidence was suffi-

cient to support the verdict of guilt. The mysterious message to "B" is so lacking in probative value and the other evidence so inconclusive that, even if the message is considered to be a part of the record on which the sufficiency-of-evidence ruling is to be based, the motion for judgment of acquittal should have been sustained. I would reverse defendant's conviction and remand for an entry of judgment of acquittal.

LAVORATO, C.J., joins this dissent.