# IN THE COURT OF APPEALS OF IOWA

No. 23-0483
Filed January 9, 2025

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**ALEXANDER KEN JACKSON,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Linn County, Lars G. Anderson,
Judge.

     Alexander Jackson appeals his three convictions for first-degree murder.
**AFFIRMED.**

     Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold,
Assistant Appellate Defender, for appellant.

     Brenna Bird, Attorney General, and Aaron Rogers, Assistant Attorney
General, for appellee.

     Heard by Tabor, C.J., and Ahlers and Sandy, JJ.

**AHLERS, Judge.**

On the morning of June 15, 2021, someone shot and killed three members of a family—the mother, father, and daughter—in their home. Only the adult son, Alexander Jackson, survived. Jackson told investigators that someone entered the house through a basement door of the family's walk-out ranch home, found a gun that belonged to the family, loaded the gun with ammunition that had been left out, and went through the home and shot his family members. He said he had been sleeping on the home's screened-in porch and went inside to investigate when he heard the gunshots. That's when Jackson claimed he saw the intruder in the basement messing with the gun, ran at him, struggled over the gun, and got shot in the foot. Then the intruder fled the scene, and Jackson called 911 for help.

But as investigators began to work the case and talked with Jackson while he was at the hospital to treat his injuries, they became suspicious of his version of events. Their investigation quickly pointed toward Jackson as the perpetrator. Eventually, the State charged him with three counts of first-degree murder. A jury found him guilty as charged.

Jackson appeals. He challenges the sufficiency of the evidence, the denial of a requested jury instruction, and evidentiary rulings.

## I.      Sufficiency of the Evidence

We begin by addressing Jackson's challenge to the sufficiency of the evidence supporting his convictions because success on this challenge would require us to remand for judgment of acquittal and end our inquiry. We review claims of insufficient evidence for correction of errors at law. *State v. Cook*, 996 N.W.2d 703, 708 (Iowa 2023). "We will uphold a jury's verdict if it is supported by

substantial evidence." *Id.* There is substantial evidence if it could convince a rational fact finder of the defendant's guilt beyond a reasonable doubt. *Id.* We "view the 'evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record.'" *Id.* (quoting *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005)). And although Jackson raises challenges to some of the evidence admitted at his trial, we still consider the challenged evidence, regardless of whether we ultimately determine it to be admissible, in conducting our assessment of the sufficiency of the evidence. *See State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003).

Jackson claims the State provided insufficient evidence to establish his identity as the perpetrator. In doing so, Jackson attempts to attack the breadth of law enforcement's efforts and argues in favor of his version of events. While these arguments were properly made to the jury, they are not arguments that hold much sway with an appellate court. That is because "[a]ppellate review of the jury's verdict is not the trial redux." *State v. Mathis*, 971 N.W.2d 514, 519 (Iowa 2022).

The State presented the following evidence. The gun used in the murders belonged to the family. The process to load that gun was unusual enough that the officer who completed ballistic testing had to use the internet to look up instructions on how to load the gun. Given the number of gunshot wounds sustained by the victims, the shooter would have had to reload the gun during the attack. The storage box for the gun was found underneath Jackson's bed. Jackson's left and right palm prints were found on the gun.[1] Jackson had previously demonstrated

---

[1] A third palm print was also found on the gun, but it could not be determined who left that print.

his proficiency in rifle shooting as a Boy Scout using the same type of gun used in the murders. Jackson had no defensive wounds on him from any assailant.[2] Nothing in the home was disturbed—no furniture had been moved, even a jigsaw puzzle on a table in the basement was undisturbed. No neighborhood security cameras, including multiple cameras on the Jacksons' home, captured an intruder entering or exiting the Jackson home. There was no sign of forced entry to any of the home's windows or doors. A K-9 officer could not track any intruder leaving out the back of the Jacksons' home.

From this evidence, the jury could conclude that the killer was not a random intruder who found a gun with an unusual loading mechanism inside the home, knew how to load the gun, decided to shoot three of the four Jackson family members in the head, but did not search the house for valuables. Instead, the jury could conclude there was no intruder and Jackson took the gun from underneath his bed, shot his family members, shot himself in the foot to appear like a victim, and then called 911. The evidence presented by the State is sufficient to identify Jackson as the shooter. Accordingly, we reject his sufficiency-of-the-evidence challenge.

## II. Jury Instruction

Next, Jackson challenges the denial of his proposed jury instruction relating to statements made by investigators while they interviewed Jackson. "We generally review a district court's refusal to give a requested jury instruction for

---

[2] The State argued that Jackson shot himself in the foot to appear like another victim of a home invasion, noting that his foot injury differed significantly from the injuries of the other family members, who were all shot in the head.

errors at law; however, if the jury instruction is not required but discretionary, we review for an abuse of discretion." *State v. Davis*, 975 N.W.2d 1, 8 (Iowa 2022) (cleaned up). District courts have "rather broad discretion in the language that may be chosen to convey a particular idea to the jury." *Id.* (citation omitted). Accordingly, when reviewing the phrasing used in a jury instruction, we review for abuse of discretion. *See id.* (concluding the district court did not abuse its discretion when declining to use the phrasing proposed by the defendant for a reasonable doubt instruction).

When a party requests an instruction restricting evidence to its proper scope, Iowa Rule of Evidence 5.105 requires the court to instruct the jury accordingly. Two video exhibits captured investigators interviewing Jackson. The investigators' statements and conduct during those interviews were not to be considered as evidence but rather to put into context Jackson's conduct and responses. To ensure the jury viewed these exhibits in this way, the district court gave the jury this limiting instruction:

> Evidence has been offered to show that the defendant made statements during two video interviews with the police on June 15, 2021.
> If you find any of the statements were made by the defendant, then you may consider them as part of the evidence. However, the statements and questions of the officers during those interviews are not evidence and may only be considered by you as context for the defendant's answers.
> You have also heard a recording of the defendant during a 911 call. If you find that those statements were made, you may consider them as part of the evidence.

However, Jackson requested the instruction also include this paragraph right before the last paragraph of the above instruction:

> Police officers make many statements during the interview that are designed to test a person's version of events. These "interrogation techniques" may or may not be true statements and therefore are not to be considered by you as evidence in this case.

The court declined to include the requested additional language because the court considered it to be argumentative and better suited for a closing argument.

On appeal, Jackson argues the court was required to include the proposed language in the instruction because it is an accurate statement of the law. While a defendant is entitled to have the jury instructed on the applicable law on all material issues, the defendant is not entitled to select the exact phrasing used in the jury instructions. *See State v. Becker*, 818 N.W.2d 135, 141 (Iowa 2012), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016). The instruction, as presented to the jury, adequately advised the jury of the limited scope of the video exhibits showing the interviews, as required by rule 5.105. We discern no abuse of discretion in the district court's decision to omit the requested language from the instruction.

## III. Evidentiary Challenges

Next, we turn our attention to Jackson's evidentiary challenges. "District court decisions on whether to admit or exclude evidence are typically reviewed for an abuse of discretion." *State v. Dessinger*, 958 N.W.2d 590, 597 (Iowa 2021). However, hearsay claims are reviewed for corrections of errors at law. *Id.*

### A. Video of Investigator Interviews

Jackson's first evidentiary claim relates to the two video exhibits of the investigators' interview of him. One interview occurred while Jackson was in the emergency room to treat the gunshot wound to his foot and the other took place at

the police station after he was released from the hospital. He claims the district court abused its discretion when it did not include a written Iowa Rule of Evidence 5.403 balancing analysis when ruling on his motion in limine seeking exclusion of the videos of both interviews.[3] While it would have been easier for this court to conduct its review of the district court's ultimate ruling if it had articulated its specific reasoning for denying the motion, the court's failure to do so does not amount to an abuse of discretion in itself. Jackson goes on to argue that the videos of the interviews are not relevant and highly prejudicial, necessitating a new trial.[4] We disagree.

Rule 5.403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." To decide whether evidence should be excluded under this rule, we first assess the probative value of the evidence. *State v. Huston*, 825 N.W.2d 531, 537 (Iowa 2013). Second, we balance the probative value against the danger the evidence will have a wrongful effect upon the factfinder. *Id.*

Jackson now contends the hospital video has no probative value. At the

---

[3] The ruling on the motion in limine did include a written rule 5.403 balancing analysis when addressing Jackson's claim that specified portions of the video should be excluded. The court determined those portions were not relevant and ordered their removal from the video.

[4] Jackson also attempts to raise related claims. He complains that there was no limiting instruction given to the jury at the time the video exhibits were played for the jury to ensure the jury did not consider the investigators' statements during the interview for their truth, and he complains about the court expressing a hope that cross-examination of one of the investigators would move along. Jackson did not raise these issues at trial, so he has failed to preserve error relating to these claims.

hearing on the motion in limine, defense counsel argued against the admission of the interviews for a number of policy reasons, calling the investigators' conduct and questioning "theater." But counsel conceded that the "the video is still relevant."[5] We agree with this assessment as to both videos.

The video of the hospital interview showed Jackson shortly after the murders and allowed the jury to observe his demeanor and how he added details to his story as the interview progressed, as did the police station interview. Moreover, we question how interviews with the only living person who was present at the Jackson home the morning of the killings would not be of any probative value. *See State v. Liggins*, 978 N.W.2d 406, 422 (Iowa 2022) (recognizing "[p]robative value under [rule 5.403] gauges the strength and force of evidence to make a consequential fact more or less probable"). Jackson places significant focus on the investigators' statements and conduct during those interviews and argues those statements were not relevant.[6] But without them, Jackson's responses would be without any context. So, the investigators' statements and questions were relevant for the purpose of framing Jackson's statements during the interviews.[7] Contrary to Jackson's assertions, the videos of the interviews were of significant probative value.

We weigh that probative value against the risk of unfair prejudice. *Id.* "All

---

[5] Defense counsel argued against the admission of both the hospital video and video of the later interview at the police station but, both at the district court and on appeal, focuses mostly on the hospital interview.

[6] On appeal, Jackson seems to morph his argument to claim the district court should have excluded the investigators' questions and conduct from the video. But below, Jackson argued for the exclusion of the entirety of the videos.

[7] As previously discussed, the jury was provided a limiting instruction stating it should not consider the investigators' statements and questions as evidence.

relevant evidence is prejudicial." *State v. Vonk*, No. 23-1443, 2024 WL 4370601, at *3 (Iowa Ct. App. Oct. 2, 2024). But it is not enough that the evidence is highly prejudicial, it must be unfairly prejudicial to warrant exclusion. *Id.* "Unfair prejudice arises when the evidence prompts the jury to make a decision on an improper basis." *Liggins*, 978 N.W.2d at 422. Jackson contends that the risk of unfair prejudice was high given the investigators' roles as law enforcement officers and their statements to Jackson about not believing him and that they knew he was the shooter. But the jury was instructed to not consider the investigators' statements as evidence, limiting the risk of the jury making a decision based on the investigators' interview techniques. *Cf. State v. Sanford*, 814 N.W.2d 611, 620 (Iowa 2012) ("Jurors are presumed to follow instructions."). We do not believe the interview approach used by the investigators shown in either video exhibit created a risk of unfair prejudice that substantially outweighed the significant probative value of the video exhibits.

We also highlight the fact that, when Jackson raised objections to specific questions and specific conduct by the interviewing officers, the court granted several of them and excluded those portions of the video. Jackson provides no persuasive argument or authority for the claim on appeal that the entire video had to be excluded. In short, the district court did not abuse its discretion when denying Jackson's request to exclude the video exhibits of his interviews with the investigators in their entirety.[8]

---

[8] To be clear, our ruling on the admissibility of the video interviews is limited to addressing the objection lodged in the district court—which sought to exclude the interviews in their entirety. This is the only preserved issue related to the admission of the interviews. Despite this being the only preserved issue, in his

*B.*     *Hearsay*

Finally, Jackson argues the State improperly admitted hearsay evidence. The challenged evidence stems from the fact that law enforcement officers canvassed the neighborhood after arriving at the crime scene and spoke to neighbors and construction workers in the area. Over Jackson's hearsay objections, the officers were permitted to testify as to what the neighbors and construction workers told them—which, generally, is that they saw nothing unusual until police arrived and did not see anyone leaving the Jackson house.

Hearsay is an out-of-court statement offered "into evidence to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(c). The district court has no discretion to deny admission of evidence as hearsay if the statement falls within an enumerated exception and has no discretion to admit evidence over a hearsay objection in the absence of a provision allowing it. *State v. Veverka*, 938 N.W.2d 197, 202 (Iowa 2020).

The district court accepted the State's argument that the testimony was not hearsay because it was not offered for the truth of the statement but to show responsive conduct—why the officers conducted their search of the area in a particular manner. *See State v. Plain*, 898 N.W.2d 801, 812 (Iowa 2017) ("An out-

---

appellate brief, Jackson identifies numerous specific statements made by officers that he claims made the interviews unfairly prejudicial. But objections to these specific statements identified in his appellate brief were not made to the district court despite the court's request for specific objections—a request that Jackson accepted by raising objections to specific statements that did not include those identified on appeal. So, to the extent Jackson is asking us to rule on the admissibility of the specific statements made by officers identified in his appellate brief that were not identified via objection to the district court, we decline to do so, as the admissibility of those additional specific statements was not preserved for our review.

of-court statement offered only to explain responsive conduct that is relevant to an aspect of the State's case is not offered to prove the truth of the matter asserted and is therefore not hearsay."). However, rather than simply accepting the State's explanation, we must consider "whether the statement is truly relevant to the purpose for which it is being offered, or whether the statement is merely an attempt to put before the fact finder inadmissible evidence." *Id.* (citation omitted).

It was not necessary for the officers to share the specifics of what neighbors and workers told them to explain their approach to canvassing the neighborhood.[9] Instead, we conclude the State introduced the evidence through a backdoor during officer testimony rather than calling all the neighbors and workers to testify that they saw no one suspicious in the area. *See id.* at 812–13. Because the primary purpose of the officers' testimony about neighbors and workers not noticing anyone suspicious or fleeing the area was to prove the truth of the matter asserted, it amounted to hearsay, and the State does not claim that any exception to the rule excluding hearsay applies. But concluding the evidence was inadmissible hearsay and should not have been admitted does not end our inquiry. Before Jackson is entitled to relief, we must determine if inclusion of this evidence prejudiced him. *See id.* at 813.

When inadmissible hearsay is admitted as evidence, we presume prejudice,

---

[9] We caution parties and trial judges to critically assess whether the details of an out-of-court statement are truly necessary to explain responsive conduct. Allowing law enforcement officers to testify to specifics of what others told them threatens to eviscerate the rule against hearsay by essentially creating a "police officer's exception" to the hearsay rule—that is, treating everything an officer hears as admissible evidence. There is no such exception. Often, as here, the specifics of the person's statement to law enforcement are simply not necessary to explain the officer's ensuing conduct.

and it is up to the State to establish otherwise. *Id.* Here, the State has met its burden. Multiple neighbors testified at trial that they saw nothing suspicious in the neighborhood that morning. Security footage from the Jacksons' own home shows no one entering or leaving the home that morning until police arrived on the scene. And the jury still received a limiting instruction telling them to not consider what the neighbors and workers told the officers for the truth of the matter.[10] Limiting instructions "may serve as 'an antidote for the danger of prejudice.'" *Id.* (quoting *State v. Putnam*, 848 N.W.2d 1, 15–16 (Iowa 2014)). In this instance, we believe the limiting instruction inoculated the jury to any prejudice, particularly because the evidence was duplicative of other properly admitted evidence.

Moreover, the evidence against Jackson was overwhelming. *See State v. Elliot*, 806 N.W.2d 660, 669 n.1 (Iowa 2011) (recognizing a way to demonstrate inadmissible evidence did not taint the jury is to establish overwhelming evidence of guilt). There was no evidence of an intruder as Jackson claimed—no intruder on any security footage, no signs of a forced entry, no signs of anyone searching for valuables, no defensive wounds on Jackson from fighting off an intruder aside from the bullet hole straight down into his foot, no signs of a struggle between Jackson and an intruder, no murder weapon or ammunition brought into the home.

---

[10] The jury instruction stated:

> During the course of trial, you have heard testimony from various officers regarding statements allegedly made to them by neighbors and workers in the area where these crimes occurred. These statements were not offered for the truth of the matter asserted. Therefore, you may not consider the statements allegedly made by neighbors or workers as evidence in this trial and may only use the statements to consider the conduct made by officers in response to the information they received.

That leaves Jackson as the only possible shooter. Jackson knew how to shoot and load the murder weapon. The box for the gun was found under his bed. Jackson told an officer that he had been shot in the hallway and then crawled around, but there were bloody footprints originating in his bedroom and trailing around the basement—indicating he shot himself in the foot in his bedroom. Jackson, home from his second year at college, had failed most of his classes and his father had been urging him to find employment, implying otherwise he would have to move out. This suffices as motive. *See State v. Richards*, 809 N.W.2d 80, 94 (Iowa 2012) (recognizing that establishing motive is helpful to establishing identity). It is apparent from our review of the properly admitted evidence that Jackson murdered his three family members. The State has overcome the presumption of prejudice that comes with the improperly admitted hearsay evidence, so Jackson is not entitled to relief.

## IV.     Conclusion

The State presented sufficient evidence to establish Jackson committed the murders. The district court correctly instructed the jury. The district court did not abuse its discretion by admitting the video exhibits of Jackson's interviews with investigators. However, the court erred by permitting officer testimony about what neighbors and construction workers said they observed. That specific testimony was not necessary to explain the officers' responsive conduct. However, no prejudice resulted from its admission given other evidence properly admitted, the limiting instruction provided to the jury, and the overwhelming evidence of Jackson's guilt.

**AFFIRMED.**