**STATE of Iowa, Appellee,**

v.

**Corey DeWITT, Appellant.**

**No. 97–1100.**

Supreme Court of Iowa.

July 8, 1999.

Linda Del Gallo, State Appellate Defender, and Patricia Reynolds and Christopher A. Cooklin, Assistant State Appellate Defenders, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, John P. Sarcone, County Attorney, and Daniel Voogt and Jeffrey Noble, Assistant County Attorneys, for appellee.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and CADY, JJ.

LARSON, Justice.

Corey DeWitt was convicted of first-degree murder and first-degree robbery under Iowa Code sections 707.1, 707.2, 711.1, and 711.2 (1995), and he appealed. The court of appeals affirmed on a divided vote, and we granted DeWitt's application for further review. We reverse and remand for a new trial.

The victim, Michael Brown, drove to a parking lot in Des Moines where he met Dimayne Pickens and Duriel Browne. The victim told Pickens he wanted "a hundred." Pickens sold him "gank," or fake cocaine, for $100. The victim soon discovered he had been "ganked" and drove back

to confront the seller. Pickens, however, had fled on foot. The victim told Browne, who remained at the scene, he had been ganked by Pickens and offered to buy fifty dollars worth of "real stuff."

Some time during this discussion, the defendant, Corey DeWitt, and Deangelo Coleman approached. Browne soon drove away, leaving the victim with the defendant and Coleman. DeWitt was standing near the driver's door on the victim's car, and Coleman was standing near the rear, apparently on the passenger's side, according to a witness. Witnesses soon saw the victim's car careening down the street with the passenger-side door open. The victim, who had been shot, drove himself to a Des Moines hospital where he died.

Meanwhile, Pickens, who had sold the gank to the victim, had gone to his cousin's apartment near the scene of the transaction. Pickens saw DeWitt and Coleman there. Pickens testified to the following:

Q. [Prosecutor]: What happened at [your cousin's] place when you were there? A. [Pickens]: Told him what he did.

Q. Who did? A. Corey DeWitt.

Q. What did he tell you? A. He said that he shot—that he shot him and I said—

Q. He told you what? A. He shot that dude.

Q. And tell us to the best of your ability what it was that he said to you exactly. A. He said—he said that—I think he said he shot him for me and I said—I said, "You didn't shoot him for me because I already ran."

Q. Okay. He said he shot him for you? A. Yeah.

Q. Meaning he shot him for you? A. Yeah.

Q. And you said what? A. I said, "You didn't shoot him for me because I was already gone." I already ran.

. . . .

Q. Other than shooting him for you, did he say anything about what had

happened at the car or why he shot him?

A. He tried to rob him.

Pickens testified that DeWitt showed him a gun he claimed to have used to kill the victim.

DeWitt's theory at trial was that Coleman, not DeWitt, shot the victim. DeWitt attempted to support that theory largely through the testimony of Duriel Browne. The court, however, sustained the State's objection on hearsay grounds. Browne then testified in an offer of proof outside the presence of the jury that he was with Coleman several days after the shooting. A police cruiser was "rolling" toward them, according to him, and Coleman fled. Browne said Coleman had told him why he had left:

He [Coleman] just told me; we was all standing around in Oakridge one day and the police rolled down the street and he ran. I like, why you running for, man, like that and he was like, because *I don't want to be up here carrying this revolver that I got a body on.*

(Emphasis added.) Soon after allegedly making this statement to Browne, Coleman was shot. Police recovered a gun from him that ballistics tests revealed was the gun used to shoot the victim in this case.

On appeal the principal issue is the propriety of the district court's refusal to allow evidence of Coleman's "revolver that I got a body on" statement. The defendant contends this statement was not hearsay, and even if it were, it was admissible as an exception to the hearsay rule under Iowa Rule of Evidence 804(b)(3) (statement against penal interest). Under that rule,

[a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. *A statement tending to expose the declarant to criminal liability and offered to exculpate the*

*accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.*

(Emphasis added.) (Although Browne testified about the statement by Coleman, he also testified that it did not necessarily mean that Coleman had killed someone with the gun.)

The court denied the offer of proof:

I am not making a judgment that Mr. Browne was telling the truth or not. What I am ruling—the basis of my ruling is that I think that his testimony is too ambiguous both because of the lack of clarity as to whether [Coleman is] talking about whether he did the shooting that resulted in the prior body or even who that body was since we know from that record that there was more than one person shot.

The court also expressed the view that rule 804(b)(3) was inapplicable because the declarant did not incriminate himself in *this* crime, stating

my understanding of this rule is that in order to fit within this exception it has to be a statement that inculpates the declarant for the particular crime that we're talking about. And if I'm wrong about that, I'm wrong, but that's my understanding of the way the rule works.

Coleman was unavailable for testimony at trial because he had exercised his privilege against self-incrimination. *See* Iowa R. Evid. 804(a)(1). His alleged statement was a critical part of the defense because he was the only person besides the defendant who was in the immediate vicinity of the victim at the time of the shooting.

█ We agree with the defendant that the court erred in excluding this key evidence. First, by rejecting the statement on the basis it "is too ambiguous both because of the lack of clarity as to whether [Coleman is] talking about whether he did the shooting that resulted in the prior body or even who that body was," the court appeared to weigh the quality of the evidence. If the court finds sufficient corroboration (a matter we discuss later), the

meaning and weight of Coleman's statement are matters for the jury. *See United States v. Candoli,* 870 F.2d 496, 509 (9th Cir.1989) (conflict in evidence under 804(b)(3) goes to weight of testimony, not to its admissibility; under rule 104(a) judge determines preliminary admissibility and jury determines weight to give it); *cf. State v. Bugely,* 562 N.W.2d 173, 176 (Iowa 1997) (existence of evidence corroborating accomplices' testimony is legal question for court under Iowa Rule of Criminal Procedure 20(3); sufficiency of evidence is for jury).

Also, we disagree with the court's view that rule 804(b)(3) requires that Coleman's declaration inculpate himself in the crime for which the defendant was on trial. The rationale of the declaration-against-interest rule has been stated by the Supreme Court:

A number of exceptions have developed over the years to allow admission of hearsay statements made under circumstances that tend to assure reliability and thereby compensate for the absence of the oath and opportunity for cross-examination. Among the most prevalent of these exceptions is the one applicable to declarations against interest— an exception founded on the assumption that a person is unlikely to fabricate a statement against his own interest at the time it is made.

*Chambers v. Mississippi,* 410 U.S. 284, 298–99, 93 S.Ct. 1038, 1047, 35 L.Ed.2d 297, 311 (1973) (footnote omitted). The Court has also said, as to Federal Rule of Evidence 804(b)(3), that it

is founded on the common-sense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true.

*Williamson v. United States,* 512 U.S. 594, 599, 114 S.Ct. 2431, 2432, 129 L.Ed.2d 476, 482 (1994). We see nothing in the rationale or logic of rule 804(b)(3) suggesting that Coleman's statement, to be admissible, must inculpate him in the crime for

which *DeWitt* was being tried. A statement against interest that subjects the declarant to possible criminal prosecution should have the same badge of authenticity whether the potential prosecution is for the crime involved in the present trial or in some other potential case against the declarant. We therefore reject this rationale for refusing to admit Coleman's statement.

Rule 804(b)(3) requires corroborating circumstances to make the declaration admissible. Here, the evidence showed the gunshot came from the victim's right side—the side on which Coleman, not the defendant, was standing. The evidence also showed the murder weapon was owned by Coleman (although it was apparently the practice among the principals in this case to share guns), and the gun was found on Coleman at the time of the later police incident.

A federal court has made this observation of the federal counterpart to our rule:

> [T]he corroboration requirement of 804(b)(3) is a preliminary question as to the admissibility of evidence, not an ultimate determination as to the weight to be given such evidence. The district judge does not need to be completely convinced that exculpatory statements are true prior to their admission. Such a high burden was not intended by the corroboration requirement of 804(b)(3). The district court must find only that sufficient corroborating circumstances exist and then permit the jury to make the ultimate determination concerning the truth of the statements.

*United States v. Garcia,* 986 F.2d 1135, 1141 (7th Cir.1993) (footnote omitted). We conclude that sufficient corroborating circumstances were shown, and the court should have admitted the Coleman statement under rule 804(b)(3). This requires a new trial.

■ The State argues that, even if the court erred in rejecting the Browne testimony, the defendant cannot show prejudice. Even if the defendant was not the trigger man, according to the State, he was at least an aider and abettor to Coleman's act. The court submitted both theories to the jury. The State argues that, even if the defendant did not shoot the victim, there was sufficient evidence to convict him of aiding and abetting. It argues:

> [I]f the court had allowed the hearsay evidence and that evidence had persuaded the jury that Coleman [not DeWitt] "pulled the trigger," the jury, beyond a reasonable doubt, would still have convicted DeWitt of murder and robbery on an aiding and abetting theory.

We do not agree. We have no way of knowing from the verdict if the jury found the elements of aiding and abetting, and we cannot assume, as the State urges, that they were established as a matter of law. Accordingly, we reverse and remand for a new trial.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED; CASE REMANDED.**