# IN THE COURT OF APPEALS OF IOWA

No. 18-0374
Filed February 5, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ALEX COSMO MARCELINO,**
        Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

A defendant appeals his conviction for first-degree murder. **AFFIRMED.**

Nathan A. Mundy of Mundy Law Office, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

Heard by Tabor, P.J., and Mullins and Schumacher, JJ.

**TABOR, Presiding Judge.**

A jury convicted Alex Marcelino of murder in the first degree after hearing evidence he shot Phillip Gomez in the chest. Marcelino appeals his conviction, challenging (1) the district court's ruling on the State's motion in limine, (2) the court's exclusion of four out-of-court statements asserting another person was the shooter as inadmissible hearsay, and (3) its ruling on his motion for new trial. He also raises numerous contentions in a supplemental pro se brief.[1]

We decline to address his first and third issues, because he did not preserve error. We find the court's hearsay rulings were correct, or alternatively, exclusion of the statements was harmless. In addition, we find no grounds for reversal in the pro se complaints.

## I. Facts and Prior Proceedings

It was mid-August 2016, and Katy Markham had plans to go to the Iowa State Fair with her new boyfriend, Alex Marcelino. She went to the house where he was staying on the east side of Des Moines. Several other acquaintances were there, including Amber Easley, Saleumphone Phetpriyavanh, Carlos Salaises, and Phillip Gomez. The couple never made it to the fair.

Instead, an argument broke out when Easley accused Gomez of "being a cop." Markham saw Marcelino charge out of his bedroom into the living room with

---

[1] Our supreme court transferred the case to us with instructions to decide—as part of our opinion—a pending motion to strike Marcelino's February 2019 supplemental pro se brief. Recent legislation prohibits consideration of supplemental pro se filings when the party is represented. *See* 2019 Iowa Acts ch. 140, § 31. In *State v. Macke*, our supreme court held other provisions in that act were prospective only and did not apply to cases pending July 1, 2019. 933 N.W.2d 226, 235 (Iowa 2019). By extension, because this appeal and Marcelino's pro se brief were pending on July 1, 2019, we consider his pro se arguments.

a small, black gun. Marcelino asked Gomez twice "out of anger" if he was a "cop." Then Marcelino shot Gomez, according to Markham. After the first shot, Markham, Easley, and Phetpriyavanh fled the house. As they were leaving, they heard another gunshot. Easley also saw Marcelino with a small, black handgun. She only heard the shots but was "almost a hundred percent sure" Marcelino shot Gomez.[2]

Markham, Easley, and Phetpriyavanh waited outside the residence until Marcelino drove away in his Ford Bronco. But Markham had forgotten her car keys inside the home. When Easley went back inside to retrieve them, she saw Gomez lying face down on the floor, a pool of blood forming around him. Those three witnesses left in Markham's car. While driving, Marcelino called Easley's cellphone and arranged to meet at a nearby Walgreens parking lot. Once there, Marcelino left his Bronco and entered Markham's car, still holding the gun. The group discussed where to hide the gun and eventually arrived at Easley's apartment. After that, Markham parted ways with Marcelino and she did not know what happened to the gun.

But the cast is not complete. Also on hand for the shooting were at least two other people—Carlos Salaises, and his girlfriend, Wanda Anderson. They left the residence after the shooting but returned about twenty minutes later and called 911. Police officers interviewed all the witnesses and charged Marcelino with first-degree murder, in violation of Iowa Code section 707.1 and 707.2 (2016).

---

[2] Easley, though subpoenaed, refused to testify and was held in contempt. The jury considered her deposition testimony.

Four months after the shooting, during an unrelated drug raid on the home of Marcelino's friend, Michael Baker, police recovered a handgun hidden under his mattress. Using bullet fragment identifications, state criminalists concluded that gun was used to kill Gomez.

Before trial, the State moved to block Baker and Anderson from offering "inadmissible hearsay" statements that Salaises allegedly confessed to the murder. The district court granted that motion in limine.[3] At trial, the main defense strategy was to convince the jury that Salaises, not Marcelino, was the shooter. Salaises exercised his right under the Fifth Amendment not to incriminate himself and, therefore, was not available to testify. After the State rested, the defense renewed its objection to the State's motion in limine and presented offers of proof from Baker and Anderson. The court reaffirmed its pretrial ruling. The jury returned a verdict finding Marcelino guilty as charged. Marcelino appeals.

## II. Analysis

### A. Ruling on State's Motion in Limine

Defense counsel's brief begins with the contention the district court denied Marcelino the right to present a defense under the Sixth Amendment by excluding "non-hearsay testimony" from Anderson and Baker. Counsel also suggests the

---

[3] The court stated it did not believe there was "sufficient information regarding corroboration, regarding trustworthiness, those two things in particular, as well as other factors that the Court needs to take into consideration when deciding whether to allow hearsay testimony to come in under the residual exception or statements under the exception relating to statements against interest."

court's ruling on the State's motion in limine violated his right to due process. In his pro se brief, Marcelino adds a confrontation clause claim.[4]

The defense did not raise those constitutional claims at trial. Sensibly so, since the district court did not violate Marcelino's rights as alleged here. On appeal, Marcelino misreads the district court's ruling. The district court excluded only the hearsay statements, not the entire testimonies of Baker and Anderson. To the extent the district court mentioned nonhearsay statements, it was in the context of finding insufficient indicators of trustworthiness for purposes of the hearsay exceptions urged by the defense. Trial counsel recognized the context of the district court's analysis and did not object. Because Marcelino is raising these constitutional claims for the first time on appeal, they are not preserved for our review. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012).

Marcelino alleges *DeVoss v. State* allows us to vault over error preservation. 648 N.W.2d 56, 62 (Iowa 2002). But *DeVoss* allows an appellate court to *sustain* an evidentiary ruling on any proper ground even if not urged in the district court. *Id.* This exception to error-preservation rules serves the purposes of "judicial economy" and "finality" because "on retrial the error could easily be corrected." *Id.* By contrast, Marcelino urges us to *reverse* the district court's ruling on a ground not raised. That outcome would be contrary to *DeVoss* and the norms of error preservation.

---

[4] In criminal prosecutions, the accused has the right to confront witnesses against them. *See* U.S. Const. amend. VI; Iowa Const. art. 1, § 10; *State v. Peterson*, 532 N.W.2d 813, 816 (Iowa 1995) (citation omitted) (discussing right of criminal defendant to compulsory process for obtaining witnesses "is in plain terms the right to present a defense").

In his pro se brief, Marcelino alleges trial counsel was ineffective in handling the hearing on the State's motion in limine.[5]  He argues "the hearsay exception rule is being misapplied and counsel's failure to argue this point is detrimental to this case."  It is true that raising a claim as ineffective assistance may excuse the failure to preserve error.  *See State v. Ambrose*, 861 N.W.2d 550, 555 (Iowa 2015).  But here, the pro se brief alleges a different breach of duty by trial counsel.  Marcelino does not claim counsel was ineffective for not asserting at trial that the district court denied him due process or the right to present a defense when it reaffirmed its grant of the State's motion in limine.

Even if Marcelino's ineffective-assistance claim sweeps more broadly, we would find no breach of duty.  Nothing in the court's ruling prevented Marcelino from calling Anderson and Baker to deliver their nonhearsay testimony.  Marcelino did not call them to testify.  Because the alleged violations did not occur, counsel had no duty to raise the challenge, and an ineffective-assistance-of-counsel claim would fail.  *See State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018) ("[C]ounsel does not have a duty to raise a meritless issue.").

## B.  Hearsay Claims

We now examine Marcelino's four hearsay claims directly.  The rules of evidence define hearsay as an out-of-court statement offered for the truth of the

---

[5]  We review ineffective-assistance-of-counsel claims de novo.  *See Linn v. State*, 929 N.W.2d 717, 729 (Iowa 2019).  To prove this claim, Marcelino must show by a preponderance of the evidence counsel failed in an essential duty and prejudice resulted.  *See id.* at 731.  We usually preserve such claims for postconviction-relief proceedings.  *See State v. Tompkins*, 859 N.W.2d 631, 637 (Iowa 2015).  But we may address them on direct appeal when the record is adequately developed to do so.  *Id.*

matter asserted. *See* Iowa R. Evid. 5.801(c). Hearsay is inadmissible unless it falls within an exception. *See* Iowa R. Evid. 5.802. Marcelino contends the district court should have admitted three statements by Salaises implicating himself in the murder. The first statement, Marcelino claims, did not fit the hearsay definition. He alleges the second and third utterances were admissible as statements against interest. *See* Iowa R. Evid. 8.504(b)(3). He claims a fourth statement was admissible under the residual exception. *See* Iowa R. Evid. 8.507(a). Although the State urges an abuse-of-discretion standard, we hew to precedent and review hearsay determinations for correction of errors at law. *See State v. Plain*, 898 N.W.2d 801, 810 (Iowa 2017). We do not reverse a ruling excluding evidence "unless a substantial right of the party is affected." *State v. Paredes*, 775 N.W.2d 554, 571 (Iowa 2009). We will address all four statements in turn.

### 1. Salaises's First Statement to Anderson

Salaises was staying at the same residence as Marcelino. Salaises and his girlfriend, Anderson, shared one bedroom. Anderson recounted the morning of the shooting in the defense offer of proof. According to that testimony, she was sleeping alone in her bedroom when awakened by gunshots. She then heard a commotion and people fleeing. Salaises came into the bedroom but did not answer when she asked what happened. So she went to the living room and saw Gomez on the floor. She then left the residence with Salaises. They drove to the west side of Des Moines, stopped at an address she did not know, and Salaises dropped off a small, black bag. Afterward, they returned to the house and called 911. On that drive back to the house, Salaises discussed the shooting. The first hearsay complaint concerns this proffered testimony.

Q. Okay. Prior to going back to the house, did you and Carlos discuss what the plan was? A. Yeah. He told me, like, when we go, you're going to say this. And he told me to say something. You know, like, you're going to tell them this, this, and that.

Q. Okay. Specifically, do you recall what he told you? A. He said, when we go, you're going to tell them that Alex did it. That's what he said.

Q. Okay. Were you in agreement to do that? A. Not really, no. I didn't—no.

Q. Okay. So why did you do it? A. I didn't say that he did that.

Marcelino isolates this sentence: "when we go, you're going to tell them that Alex did it." He argues that declaration was not hearsay because it was an instruction not an assertion.[6] The State responds the assertion is the implied statement that Salaises is the true shooter.

### a. Is this instruction an assertion?

An "assertion" is "generally recognized to be a statement of fact or belief." *State v. Dullard*, 668 N.W.2d 585, 590 (Iowa 2003). "A great many out-of-court utterances fall within such categories as greetings, pleasantries, expressions of gratitude, courtesies, questions, offers, *instructions*, warnings, exclamations, expressions of joy, annoyance, or other emotion, etc." *State v. Rawlings*, 402 N.W.2d 406, 409 (Iowa 1987) (emphasis added). "Such utterances are not intentionally expressions of facts or opinions" and are not, therefore, hearsay. *Id.*

On the other hand, a statement—even if phrased as a question or instruction—may be hearsay if it contains "an implicit assertion of the fact." *Id.* (holding utterance "Dennis, what are you doing?" was inherent assertion that

---

[6] Marcelino does not explain in his brief how he preserved this specific ground for review. We see nothing in the record showing he asserted this statement was not hearsay before appeal. But the State does not contest error preservation, and the district court concluded it was hearsay.

Dennis was present). As an evidence expert explains: "Implied or implicit assertions are those inferences that must exist for the statement to be made." 7 Laurie Kratky Doré, *Iowa Practice Series: Evidence* § 5.801:5 (Nov. 2019 update).

Our supreme court elaborated on the concept of an implied assertion in *Dullard*, 668 NW.2d at 595 (concluding "assertions implied from assertive speech constitute statements under rule 5.801(a)"). In that case, police officers entered the home of Brett Dullard in search of drug evidence. *Id.* at 588. They found a handwritten note addressed to "B" stating there was "a black + white w/ the dude out of his car facing our own direction." *Id.* The court determined this statement showed the unknown declarant's belief that police were watching the house because the State sought to prove "Dullard's knowledge and possession of drug lab materials." *Id.* at 591. The question for the court was "whether this implied belief of the declarant is a statement under our definition of hearsay." *Id.*

Examining the "wealth of legal commentary" on the application of this rule, the court adhered to the common law view "assertions that are relevant only as implying a statement or opinion of the absent declarant on the matter at issue constitute hearsay in the same way the actual statement or opinion of the absent declarant would be inadmissible hearsay." *Id.* *Dullard* reasoned: "[T]he best approach is to evaluate the relevant assertion in the context of the purpose for which the evidence is offered." *Id.* at 595.

In other words, we must consider Marcelino's true purpose in offering Salaises's instruction to Anderson to "tell [the police] that Alex did it." Marcelino offered the statement to exculpate himself and inculpate Salaises. Because Anderson was not an eyewitness to the shooting, her boyfriend's instruction to

point the finger at someone else carried the implication that Salaises was the shooter. Under *Dullard* and *Rawlings*, we view Salaises's statement to Anderson as an implied assertion and, thus, hearsay.

### b. Is it offered for the truth of the matter asserted?

Marcelino next argues, even if the statement constituted an assertion, he was not offering it for the truth of the matter asserted. After all, why would he want the jury to hear more evidence suggesting he was the shooter? But Marcelino's literal reading of Salaises's statement ignores the implication discussed above. Marcelino offered that statement as evidence Salaises shot Gomez and was trying to cover his tracks by asking Anderson to lie for him. The underlying assertion that Marcelino was not the shooter constituted impermissible hearsay.[7] The district court properly reached that conclusion.

### 2. Salaises's Second Statement to Anderson

In her offer of proof, Anderson recalled another statement that Salaises made a few days after the shooting:

> Q. Did he state whether or not he had shot the decedent in this case? A. He did, but, like, not right then and there.
> Q. And when did he make that statement? A. It was a couple of days after that.
> Q. And how did he make that statement? A. He said, oh, poor Alex is going to go to jail for what he did—or for what Carlos did.
> Q. Okay. When you say "he"—. A. I'm talking about Carlos. Carlos said that he was going to go to jail for what Carlos did.

Marcelino argues the court should have admitted Salaises's alleged declaration that "poor Alex [was] going to jail for what he [Carlos] did" as a statement against interest.

---

[7] Marcelino does not assert any exception applies here.

A statement against interest is a statement that:

> (A) A reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it . . . had so great a tendency . . . to expose the declarant to . . . criminal liability; and
>
> (B) Is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability and is offered to exculpate the defendant.

Iowa R. Evid. 5.804(b)(3).

In *Paredes*, our supreme court explained, to be admissible, a statement against interest must (1) meet a threshold adversity requirement but "need not amount to a full confession" and (2) be made under circumstances that "clearly indicate" its trustworthiness. 775 N.W.2d at 564–66. The requirement to find corroborating circumstances is a preliminary question for the district court under Iowa Rule 5.104(a). *See State v. DeWitt*, 597 N.W.2d 809, 811 (Iowa 1999) (clarifying court is not to weigh the quality of the evidence, a job for the jury).

Further elaborating on the trustworthiness requirement, the *Paredes* court explained corroboration "require[s] something more than the inherent trustworthiness associated with a declaration against interest." 775 N.W.2d at 566–67. It employed a "multifactored test in which all evidence bearing on the trustworthiness of the underlying statement may be considered." *Id.* at 567. "No one criterion would be determinative, but the district court could consider a wide variety of facts and circumstances." *Id.*

The federal courts have championed these factors:

> (1) whether there is any apparent motive for the out-of-court declarant to misrepresent the matter, . . . (2) the general character of the speaker, . . . (3) whether other people heard the out-of-court statement, . . . (4) whether the statement was made

spontaneously, . . . (5) the timing of the declaration[, and (6)] the relationship between the speaker and the witness.

*Id.* at 568 (alteration in original) (quoting *United States v. Alvarez*, 584 F.2d 694, 702 n.10 (5th Cir. 1978)).

As to the amount of corroboration required, the *Paredes* court refused to adopt "a hard and fast rule." *Id.* But it noted the standard should not be set "so high that if a defendant can meet it, he would 'probably never have been charged or tried in the first place.'" *Id.* (citation omitted). "[T]he defendant's own claim of innocence cannot be sufficient corroboration" either. *Id.* The court emphasized the inquiry is not whether there is "corroborating evidence of the statements themselves" but "whether the circumstances under which the statements were made are sufficiently trustworthy to allow a jury to make the ultimate determination concerning their truth." *Id.* at 570.

Here, the district court found Marcelino did not show the surrounding circumstances supported the trustworthiness of Salaises's statement to Anderson. The details shared in the defense offer-of-proof testimony did not persuade the district court to let Anderson relay Salaises's out-of-court statement to the jury:

> The Court agrees that her testimony here today has offered really nothing to the Court's analysis. If anything, it just confused the situation more. There's certainly no indicia or certainly no more indicia of trustworthiness now after the Court's entertained her testimony than there was before, and there was little then—little, if any, then. And, in particular, the Court is talking about corroboration, amongst other things.

Marcelino challenges that finding on appeal. First, he contends Salaises had no motive to misrepresent that he was the shooter as he had nothing to gain by disclosing that fact to Anderson. Second, although the record reveals little about Salaises's reputation, admittedly asking his girlfriend to lie about the shooting reflects poorly on his character. But Marcelino notes the declarant's character is not the sole determinative factor. Third, Salaises allegedly told another friend, Baker, that he shot Gomez. That repetition, according to Marcelino, corroborates the trustworthiness of the statement to Anderson. Fourth, it is not clear if Salaises made the statement spontaneously. Fifth, Salaises is tied to the time and place of the shooting as witnesses saw him there. Marcelino also points to Anderson's testimony she noticed blood on Salaises's clothing after the police interview, suggesting he was in close range of the shooting.[8] Sixth, Salaises had an intimate relationship with Anderson and because of that would be more likely to share sensitive information with her.

The State counters, listing possible reasons Salaises would lie about shooting Gomez. For instance, maybe he was bragging or engaging in "idle gossip." The State also hammers Salaises's less-than-stellar character. The State reiterates Marcelino did not show the statement was spontaneous. And, in fact, its timing did not support its reliability because Salaises waited to tell Anderson until after Marcelino was arrested. Plus, the State questions the closeness of the

---

[8] The prosecution argued at trial that Anderson's alleged observation of blood spatter on Salaises's shirt was "entirely uncorroborated" by the record evidence. For example, several officers testified about what Salaises was wearing and none noticed blood evidence. In addition, the criminalist who examined the scene noted no blood spatter around the body, making it unlikely droplets would have marked the shooter.

relationship between Salaises and Anderson, noting in her recorded interview, she called Salaises "a stupid fucking bastard" and said, "I hate him."

The State acknowledges Salaises allegedly informed two people he was the shooter, but contends neither of those narrators, Anderson and Baker, were reliable sources. The State points to catch-all language in *Paredes*—"all evidence bearing on the trustworthiness of the underlying statement may be considered."[9] *See* 775 N.W.2d at 567. The State describes Anderson as "evasive" when the prosecutor cross examined her offer-of-proof testimony. The State contends we must consider the truthfulness of the witness who claims to have heard the declarant's statement.

The State's argument that Anderson was not a credible witness is misplaced. After our supreme court decided *Paredes* in 2009, the federal rules of evidence added this commentary:

> In assessing whether corroborating circumstances exist, some courts have focused on the credibility of the witness who relates the hearsay statement in court. But the credibility of the witness who relates the statement is not a proper factor for the court to consider in assessing corroborating circumstances. To base admission or exclusion of a hearsay statement on the witness's credibility would usurp the jury's role of determining the credibility of testifying witnesses.

Fed. R. Evid. 804(b)(3), advisory committee's note to 2010 amendment.[10]

---

[9] The *Paredes* court did not address the credibility of the social worker who relayed the hearsay statement at issue there.

[10] We recognize that unlike the federal drafters, Iowa has not amended its rule to extend the corroborating circumstances requirement to inculpatory statement offered by the State. *See generally* 7 Laurie Kratky Doré, *Iowa Practice Series: Evidence* § 5.804:3 (Nov. 2019 update). Yet we find the 2010 commentary still provides helpful guidance for interpreting our existing rule.

Iowa courts may consider the federal advisory notes as an aid in applying our state rules of evidence.[11] *See State v. Harrington*, 800 N.W.2d 46, 51 (Iowa 2011). Taking guidance from those notes on Federal Rule 804(b)(3), we find the issue of Anderson's credibility would have been best left for the jury to weigh. *See United States v. Henderson*, 736 F.3d 1128, 1131 (7th Cir. 2013) ("The question of whether the declarant made the statement implicates the testifying witness's credibility; making credibility determinations is a role reserved to the jury."); *see also* 2 McCormick On Evid. § 319 (8th ed. Jan. 2020 update) ("As a matter of standard hearsay analysis, the credibility of the in-court witness regarding the fact that the statement was made is not an appropriate inquiry."); *but see McCorkle v. United States*, 100 A.3d 116, 121 (D.C. App. 2014) (adhering to "minority view" requiring trial court to assess credibility of in-court witness to determine admissibility of statements against penal interest); *State v. Bailey*, 895 N.W.2d 753, 755 (N.D. 2017) (maintaining district court should analyze both the credibility of the in-court witness and the reliability of the out-of-court declarant).

But even without considering Anderson's credibility, we find Marcelino has not satisfied rule 5.804(b)(3)'s corroboration requirement. The circumstances surrounding Salaises's statement to Anderson did not provide a sufficient aura of trustworthiness to allow the jury to hear it. While Salaise had no apparent motive to lie to Anderson about shooting Gomez, he also risked little by doing so. *See United States v. Battiste*, 834 F. Supp. 995, 1006 (N.D. Ill. 1993) (quoting John W.

---

[11] The United States Supreme Court also relies on such notes as "a respected source of scholarly commentary" and "as a useful guide in ascertaining the meaning of the Rules." *Tome v. United States*, 513 U.S. 150, 160 (1995).

Strong *et al., McCormick on Evidence* § 319 at 345 (4th ed. 1992)) ("Common sense dictates that '[a] relation of trust and confidence between speaker and listener . . . militates against awareness that the making of the statement might be against declarant's penal interest.'"). Police officers twice interviewed Saliaises, placing his penal interests directly at stake, and both times Salaises said he was in a separate room when the shooting occurred. Marcelino also fails to show the speaker's good character or that the statement was spontaneous. In fact, Anderson testified (as part of the offer of proof) that despite the fact they were together at the house where the shooting occurred, Salaises did not confess he was the shooter until days later. And his confession only came after Marcelino had been arrested. Nothing in Anderson's offer of proof pointed to circumstances that substantiated Salaises claim that he was the shooter. The district court appropriately excluded this statement as impermissible hearsay.

### 3. Salaises's Statement to Baker

The defense also called Baker to make an offer of proof on two hearsay statements made to him. Salaises and Baker knew each other through their drug distribution activities in Des Moines. When police raided Baker's apartment, they discovered the murder weapon under a mattress. Baker testified Salaises approached him about two weeks after the shooting asking to borrow money. Baker described that conversation in the following exchange:

> Q. Did he say why he wanted to borrow money? A. He didn't say why he wanted to borrow money. But we get to talking and stuff is when he told me that he had to do it because it was—the situation was all over the news. Because I thought that they had been raided, and he said he had to do it.

Q. Was there any other information that he gave you or any more details in this discussion?  A. I mean, no, not really.  He doesn't speak very good English, so . . . .

Q. Do you remember meeting with law enforcement and giving them a statement?  A. Yes.

Q. If I showed you what they claim you said, would that help refresh your memory?  A. Sure.  Oh, yeah.

Q. Did that help refresh your memory, sir?  A. Yeah.

Q. Was there any comments about a law enforcement official or anything of that nature?  A. Well, yeah.  He thought that the dude— the guy that got shot was a police officer.

Q. And who told you that?  A. He did.

Marcelino argues Salaises telling Baker that "he had to do it" meant Salaises had to shoot Gomez because Salaises thought Gomez was a police officer.  Marcelino argues Salaises's statement to Baker—like the statement to Anderson—was admissible as a statement against interest.  Again, Marcelino challenges the district court's conclusion the statement was not supported by corroborating circumstances that clearly indicated its trustworthiness.

Marcelino contends Salaises had no motive to lie to Baker.  On that point, the defense asserts the relationship between Salaises and Baker was so strong that Salaises felt comfortable asking to borrow money.  So they were close enough to share a confidence, which makes the utterance more trustworthy.  Marcelino also notes Salaises made that similar admission to Anderson.

In response, the State suggests Salaises may have been trying to impress Baker.  The State disputes the closeness of the relationship between the witness and speaker, emphasizing they interacted through drug trafficking rather than as personal friends.  In the State's view, the record does not show the statement was spontaneous or that Salaises possessed good character.  The State also urges us

to consider the ambiguous nature of the comments and Baker's acknowledgement Salaises did not speak English well as weighing against admission.

As with Anderson, the State insists Baker's limited credibility weighs against admitting the hearsay. Baker was a convicted drug trafficker who was in federal prison at the time of trial. Police found the murder weapon at Baker's apartment. And Baker did not come forward with this testimony until a year after the shooting. As discussed above, we do not believe the credibility of the witness who relates the statement is a proper factor for us to consider in assessing corroborating circumstances.

The district court could not find "sufficient indicia of trustworthiness" to support admission of Salaises's comment to Baker as a statement against interest. We see no error in that finding. This record sheds little light on Salaises's motive for allegedly confessing to Baker. When we examine the factors discussed in *Paredes*, we detect insufficient corroboration to ensure the trustworthiness of the out-of-court declaration. The court did not err in refusing to admit it as a statement against interest.

### 4. Linhart's Statement to Baker

Also in its offer of proof, the defense asked Baker about an out-of-court statement by fellow drug distributor, Christian Linhart. Linhart lived in the same apartment as Baker and was present when police found the murder weapon. Baker described Linhart's statement as follows:

> Q. So Christian Linhart had some information also? A. Yeah.
> Q. What did Christian tell you? A. That Alex ain't the one that did it.
> Q. And did he say how he knew that? A. From what I gathered, I thought he was there.

Q. Okay. Did Christian ever admit to you he was there?
A. Kind of.

Q. Okay. A. I mean, he didn't come out and say it, like, I was there. But the way he explained it to me, he would, like, have to be there.

Q. And how did Mr. Linhart know that the gun got tied back to this homicide? A. He told me he was supposed to get rid of it.

Q. Did he say anything else, why he didn't want to get rid of it or why didn't he get rid of it? A. He said it was the only gun he had, so he didn't want to get rid of it.

Marcelino argues Linhart's statement—"Alex ain't the one that did it"—was admissible under the residual hearsay exception.[12] *See* Iowa R. Evid. 5.807. That exception provides:

> Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in rule 5.803 or 5.804:
> (1) The statement has equivalent circumstantial guarantees of trustworthiness;
> (2) It is offered as evidence of a material fact;
> (3) It is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) Admitting it will best serve the purposes of these rules and the interests of justice.[13]

*Id.* 5.807(a).

The State does not seriously dispute the second element, but contends Marcelino did not satisfy the other three criteria for admissibility under the residual exception. For his part, Marcelino concentrates only on the question of trustworthiness. He argues, "While the details and corroborating circumstances

---

[12] The defense acknowledges the utterance was not admissible as a statement against interest because no evidence showed Linhart was unavailable. *See* Iowa R. Evid. 5.804(b).

[13] Our case law also recognizes a fifth requirement of notice. *See State v. Neitzel*, 801 N.W.2d 612, 623 (Iowa Ct. App. 2011). The State acknowledges Marcelino provided "some degree" of notice of his intent to offer this statement.

surrounding Linhart's statement are generally lacking, there is one strong piece of evidence that Linhart had specific knowledge of the true identity of the shooter: his possession of the murder weapon."

The residual rule does not grant broad license to admit hearsay statements not covered by delineated exceptions; it is to be used "very rarely and only in exceptional circumstances." *State v. Brown,* 341 N.W.2d 10, 14 (Iowa 1983). Although neither party cites authority on the question whether the trustworthiness prong of rule 5.807(a) aligns with the analysis for rule 5.804(b), we believe the same factors bear on both rules.

After considering those factors, we conclude the district court correctly decided Linhart's statement was not admissible under the residual exception. Marcelino concedes corroborating circumstances were lacking. Linhart's possession of the murder weapon offers minimal corroboration because the record is unclear how he obtained the gun. The record also does not verify Linhart's presence at the shooting. If Linhart was not there, it is unclear how he could have known "Alex ain't the one that did it" unless someone told him. That scenario introduces another layer of hearsay. The circumstances surrounding Linhart's statement do not demonstrate sufficient trustworthiness to make it admissible under the residual hearsay exception.

In addition, as the State argues, Marcelino did not show a necessity for admitting Linhart's statement. Necessity means the proponent has no proof equally probative on the same point. *See State v. Rojas,* 524 N.W.2d 659, 663 (Iowa 1994) (finding evidence necessary when victim recanted). Marcelino made no reasonable effort to call Linhart as a witness. Calling the declarant to the stand

was an alternative means of obtaining the same evidence and therefore the admission of the hearsay was not necessary.

### 5. Harmless Error

The State argues that even if the district court wrongly excluded any of Salaises's out-of-court statements, Marcelino is not entitled to reversal. The State contends it presented a "strong case" with two eyewitnesses to Marcelino shooting Gomez. We agree the State's evidence clearly cast Marcelino as the shooter. Easley testified Marcelino and Gomez were having a "brief argument" when she heard gunshots and saw Marcelino with a gun. She testified she was "almost a hundred percent sure that he shot the gun." Similarly, Markham testified Marcelino had a gun, shouted at Gomez about whether he was a cop, and then shot Gomez. Markham said she was not aware of anyone else in the living room having a gun. The State provided corroboration for Markham's version of events with text messages from her phone.

We will not reverse a ruling excluding evidence unless a substantial right of a party is affected. Iowa R. Evid. 5.103(a); *Paredes*, 775 N.W.2d at 571. We must decide whether Marcelino's rights have been injuriously affected by the exclusion of these statements or whether he has suffered a miscarriage of justice. *See Paredes*, 775 N.W.2d at 571. We presume prejudice unless the record affirmatively shows no impact on his substantial rights. *Id.* After reviewing the record as a whole, we find any error was harmless. The introduction of Salaises's out-of-court statements, from less than credible sources, would not have been a significant benefit to Marcelino's defense.

Given the strength of the State's case, we find the record affirmatively establishes a lack of prejudice. *State v. Newell*, 710 N.W.2d 6, 20 (Iowa 2006).

### C. Motion for New Trial

Marcelino next argues the court erred when it denied his motion for new trial. He contends the court applied an incorrect standard—evaluating the sufficiency rather than the weight of the evidence. *See State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). A conviction rests upon insufficient evidence when, even after viewing the evidence in the light most favorable to the State, no rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003). In contrast, weight of the evidence refers to a determination that a greater amount of credible evidence supports one side of an issue than the other. *Id.*

In his motion for new trial, Marcelino mistakenly asked the court to find "sufficien[t] . . . evidence to support the verdict . . . view[ing] the evidence in the light most favorable to the verdict including reasonable inferences which may be drawn from that evidence." The court ruled, "there was sufficient evidence to support the verdict rendered by the jury in all respects." Marcelino did not ask for amended findings or cite the weight-of-the-evidence standard to the district court. Thus he has not preserved error for appeal. *See Ambrose*, 861 N.W.2d at 555.

### D. Easley Deposition

In his pro se brief, Marcelino questions why the court allowed the State to read Easley's deposition into the record when she was "readily available" to testify. He contends he lost his chance to impeach her based on alleged drug and alcohol use. He raised this issue at trial, so we may address it.

Although Easley responded to the State's subpoena and appeared for trial, she refused to testify, claiming her right against self-incrimination. Although the court told her she had no Fifth Amendment right in this case, she continued to refuse. The court held her in contempt. Lacking Easley's in-court testimony, the State offered her deposition. Defense counsel acknowledged her unavailability, but nevertheless objected.

Rule 5.804(b)(1) allows admission of a deposition when the declarant is "unavailable" and the defendant had "an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Here, the court followed that rule. First, Marcelino conceded at trial Easley was unavailable, so we do not address his contrary claim on appeal. *See Lamasters*, 821 N.W.2d at 862. Second, Marcelino had adequate opportunity to cross-examine Easley during her deposition. The court did not err in admitting it.

### E. Notice of Charges

Marcelino alleges the "indictment" against him lacked sufficient detail to inform him of the charges.[14] He raises this issue as an ineffective-assistance-of-counsel claim. *See Ambrose*, 861 N.W.2d at 555. We address the claim because the record is adequate to do so. *See Tompkins*, 859 N.W.2d at 637.

"The purpose of an indictment or trial information is to apprise the defendant of the crime charged so that the defendant may have the opportunity to prepare a defense." *State v. Grice*, 515 N.W.2d 20, 23 (Iowa 1994). We read the trial

---

[14] In Iowa, the State may prosecute indictable offenses by grand jury indictment or by trial information. *See* Iowa Rs. Crim. P. 2.4(1), 2.5(1). The State charged Marcelino by trial information.

information and the minutes of testimony together to see if the defendant received enough information about the State's accusations. *See State v. Dalton*, 674 N.W.2d 111, 120 (Iowa 2004).

Marcelino claims the charging instrument failed to specify the type of murder. The trial information alleged Marcelino committed murder in the first degree by "willfully, deliberately, with premeditation and malice aforethought killing" Gomez and cited Iowa Code sections 707.1 and 707.2. The minutes of evidence filled in considerable detail about the allegations and the evidence to be presented. We conclude the information and minutes sufficiently informed Marcelino of the murder charge. Consequently, counsel was not ineffective in failing to raise a challenge.

### F. Interpreter for Plea Offer

Marcelino also criticizes counsel for failing to line up an interpreter to help explain the State's plea offer. Marcelino asserts he did not speak English; he informed counsel he needed an interpreter; yet counsel failed to secure that assistance. In Iowa, a person who is not proficient in English is entitled to an interpreter to assist in understanding legal proceedings. *See* Iowa Code § 622A.2; *Thongvanh v. State*, 494 N.W.2d 679, 681–82 (Iowa 1993). But the record here is not adequately detailed about the plea offer, Marcelino's language skills, or counsel's alleged conduct. Thus, we preserve this claim for possible postconviction-relief proceedings. *See State v. Harris*, 919 N.W.2d 753, 754 (Iowa 2018) ("If the development of the ineffective-assistance claim in the appellate brief was insufficient to allow its consideration, the court of appeals should not consider the claim, but it should not outright reject it.").

### G. Medical Examiner Testimony

Marcelino contends trial counsel was ineffective in not objecting to the testimony of the Polk County medical examiner that Gomez died by homicide. Marcelino asserts the State must prove the type of death. Dr. Gregory Schmunk discussed various manners of death and defined "homicide" as "death at the hands of another." The doctor opined that because the autopsy showed Gomez died of a gunshot wound to the chest, the manner of death was homicide. When, as here, the medical examiner bases his manner-of-death opinion primarily on the autopsy, that opinion will likely assist the jury in comprehending the evidence and would be admissible. *See State v. Tyler*, 867 N.W.2d 136, 163 (Iowa 2015). Counsel had no duty to object to the medical examiner's opinion.

### H. Remaining Pro Se Arguments

Marcelino raises five other claims. (1) He contends the court usurped the jury's role in assessing the trustworthiness of the hearsay witnesses. (2) He argues, at most, a jury could have convicted him of involuntary manslaughter because Easley's insinuation Gomez was a "cop" was the proximate cause of the shooting. (3) He alleges the State did not prove the witnesses were sober at the time of the shooting or that he acted with premeditation. (4) Marcelino claims the State illegally searched witnesses' cell phones without warrants. And (5) he complains the prosecutor engaged in misconduct by misstating facts during closing argument. Marcelino did not raise any of these claims at trial, nor does he raise them as ineffective-assistance-of-counsel claims. Thus, they are not properly presented for appeal. *See Ambrose*, 861 N.W.2d at 555.

**AFFIRMED.**